IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MOTAI SAIB, *et al.*, | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Civil Action No. 05-CV-1353 (RMC) |
| GEORGE W. BUSH,<br>President of the United States,<br>*et al.*, | ) ) ) ) ) | |
| Respondents. | ) ) ) | |

**RESPONDENTS' RESPONSE TO PETITIONER'S "OPPOSITION" TO
RESPONDENTS' MOTION TO STAY PROCEEDINGS
PENDING RELATED APPEALS**

Respondents hereby submit this response to petitioner's "opposition" to respondents' motion to stay proceedings pending resolution of the appeals of Khalid v. Bush, Boumediene v. Bush, Nos. 04-CV-1142 (RJL), 04-CV-1166 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), appeals docketed, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2, 2005), and In re Guantanamo Detainee Cases, No. 02-CV-0299, et al., 355 F. Supp. 2d 443 (D.D.C. 2005), appeal on petition for interlocutory appeal, No. 05-5064 (D.C. Cir. Mar. 10, 2005).  Respondents' motion to stay was granted by the Court on August 1, 2005.  See Minute Order dated August 1, 2005 (staying proceedings in this case pending the disposition of related appeals and applying the protective order and related orders previously entered in other Guantanamo Bay detainee cases to this case).

During a hearing in this case on November 28, 2005, the Court provided petitioners the opportunity to submit a written statement of authorities in support of their argument that certain claims raised in their petition should not be stayed pending the appeals of Khalid and In re

Guantanamo Detainee Cases. On December 6, 2005, petitioners filed an "opposition" to respondent's motion to stay proceedings (dkt. no. 9),[1] which argues that petitioners' claims based on the Order on Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism issued by the President on November 13, 2001 (the "November 13, 2001 Order"), and the Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005, Public Law No. 109-13 ("PL 109-13") are not addressed in the pending appeals and, therefore, should not be stayed. Petitioners also request that the Court require respondents to produce a factual return in this case.

As explained below, petitioner Motai Saib is not being detained pursuant to the November 13, 2001 Order, therefore, any claims in the petition based on the November 13, 2001 Order are irrelevant to Mr. Saib's detention at Guantanamo Bay. Further, PL 109-13 provides no private right of action to petitioners, and any possible cause of action arising out of petitioners' claims based on PL 109-13 would derive from petitioners' alleged rights under the Administrative Procedures Act ("APA") or the U.S. Constitution, which are the subject of the appeals in Khalid and In re Guantanamo Detainee Cases. Respondents also should not be required to produce a factual return pending the resolution of the appeals, which will determine whether reference to specific factual returns is required at all. Therefore, petitioners have failed to present any legitimate basis for the Court to modify its August 1, 2005 Order staying proceedings in this case pending the resolution of the appeals in Khalid and In re Guantanamo Detainee Cases.

---

[1] Petitioners presumptively style their written statement of authorities as an "opposition" to respondents' motion to stay, as if their motion to vacate the Court's August 1, 2005 Order, currently pending before the Court, had already been granted.

**ARGUMENT**

I.  **Petitioners' Claims Based on the November 13, 2001 Order and PL 109-13 Do Not Warrant Modifying the Stay of Proceedings in This Case.**

On August 1, 2005, the Court properly determined that the above-captioned case should be stayed pending resolution of all appeals in <u>Khalid</u> and <u>In re Guantanamo Detainee Cases</u>, which will address the core issues presented by this case, including: (1) whether petitioner has stated valid claims under the Fifth Amendment to the United States Constitution and, if so, whether the procedures implemented by respondents to determine the status of petitioner violates his Fifth Amendment rights; (2) whether petitioner has stated valid claims under the Third Geneva Convention; (3) whether petitioner has stated valid claims based on various other legal theories, including other Constitutional provisions, other international treaties, Military regulations, the Administrative Procedures Act, the Alien Tort Statute, and customary international law. As explained in respondents' motion to stay, it makes no sense for this case to proceed prior to resolution of the related appeals; further proceedings would require the expenditure of significant judicial and other resources that may be avoided as a result of the appeals, and, in any event, such proceedings very likely would have to be revisited or relitigated once the appeals are decided and the Court of Appeals provides guidance regarding handling of the claims in all of the Guantanamo Bay detainee cases. <u>See</u> Respondents' Motion to Stay Proceedings Pending Related Appeals (dkt. no. 2).

Petitioners argue that certain claims in the petition alleging that respondents' detention of petitioner Motai Saib violates the November 13, 2001 Order, which are not addressed in the <u>Khalid</u> and <u>Boumediene</u> appeals, should not be stayed. <u>See</u> Pets' Opp. at 2. As counsel for

respondents stated during the November 28, 2005 hearing, however, petitioner Saib is not being detained pursuant to the November 13, 2001 Order. All habeas petitioners presently detained by the Department of Defense at Guantanamo Bay, except for nine detainees who have been determined to no longer be enemy combatants ("NLECs") by the Combatant Status Review Tribunals,[2] are being detained as enemy combatants pursuant to the President's general authority as Commander in Chief, the congressional Authorization for Use of Military Force ("AUMF"), and the international law of war. Petitioner Motai Saib is detained as an enemy combatant pursuant to this authority. Therefore, the appeals of Khalid and In re Guantanamo Detainee Cases, which address whether the detainees in those cases are properly detained as enemy combatants pursuant to this authority, will likewise determine the same issues with respect to petitioner Saib.

Of the Guantanamo Bay detainees who are detained as enemy combatants pursuant to the President's general authority as Commander in Chief, the AUMF, and the international law of war, a subset of these detainees may be eligible for prosecution and trial by military commission for violations of the law of war. The November 13, 2001 Order provides the authority upon which an enemy combatant may be prosecuted and tried by military commission. In accordance with the November 13, 2001 Order, the President must first determine "in writing" that an enemy combatant is subject to the November 13, 2001 Order before that enemy combatant may be

---

[2] The nine detainees who have been determined to be NLECs were originally detained as enemy combatants and remain detained pending necessary arrangements for their release to an appropriate destination country.

eligible for trial by military commission.  See November 13, 2001 Order, § 2(a).[3]  The President has not determined petitioner Motai Saib to be subject to the November 13, 2001 Order and, therefore, eligible for prosecution and trial by military commission.  Thus, the basis for respondents' detention of Mr. Saib is respondents' determination that he is an enemy combatant, pursuant to authority that is squarely the subject of the appeals in Khalid and In re Guantanamo Detainee Cases, and independent from the November 13, 2001 Order.[4]

---

[3]  The President's decision is a jurisdictional basis for the prosecution; until the President determines that an individual is subject to the November 13, 2001 Order, no prosecution is possible.  However, the President's determination does not require that criminal charges be brought against the individual; that decision is made by the Appointing Authority after the Chief Prosecutor recommends that charges be approved.  For this reason, the Department of Defense does not release names of detainees subject to the November 13, 2001 Order until charges have been approved by the Appointing Authority.  See, e.g., Respondents' Response to Petitioners' Memoranda Showing Cause Why Petition for Writ of Habeas Corpus Should Not Be Dismissed for Lack of "Next Friend" Standing, filed in Shafiiq, No. 05-CV-1506 (RMC), et al. (Sept. 22, 2005) at 2, n. 2 (noting that petitioner Shafiiq had recently been charged with offenses triable by military commission).  Because the issue of whether petitioner Saib is subject to the November 13, 2001 Order arose at the November 28, 2005 hearing, however, respondents addressed the matter at the hearing and informed the Court of the fact that Mr. Saib has not been made subject to the November 13, 2001 Order by the President.

[4]  The statements in Respondents' Reply in Support of Motion for Order to Show Cause in Shafiiq v. Bush, No. 05-CV-1506 (RMC), cited by petitioners, see Pets' Opp. at 4, n.4, are consistent with these facts, as respondents have represented them throughout the Guantanamo habeas litigation.  In that reply memorandum, respondents stated, "Petitioners' detention as enemy combatants is not pursuant to [the November 13, 2001 Order], however; petitioners are detained pursuant to the President's general authority as Commander in Chief, the congressional Authorization for Use of Military Force, and the international law of war."  Respondents' Reply in Support of Motion for Order to Show Cause Why Case Should Not Be Dismissed for Lack of Proper "Next Friend" Standing, or, in the Alternative, to Stay Proceedings Pending Related Appeals, filed in Shafiiq, No. 05-CV-1506 (RMC), et al. (Sept. 22, 2005), at 12, n.14.  Respondents did not represent that "Petitioner Shafiiq was not being detained pursuant to the Military Order," as petitioners suggest, see Pets' Opp. at 4, but rather that the basis for petitioners' detention as enemy combatants is not pursuant to the November 13, 2001 Order.

Counsel in many Guantanamo habeas cases have incorrectly challenged the November 13, 2001 Order as the basis for the detention of petitioners in the cases. Respondents clarified the issue in our Motion to Dismiss or for Judgment as a Matter of Law filed in the coordinated proceedings before Judges Green and Leon.[5] Consequently, Judge Green recognized in her opinion that

> [w]ithin the general set of 'enemy combatants' is a subset of individuals whom the administration decided to prosecute for war crimes before a military commission established pursuant to a Military Order issued by President Bush on November 13, 2001 . . . . This Memorandum Opinion does not address the legality of the military commission proceedings but rather focuses on the issue of the rights of detainees with respect to their classification as "enemy combatants" regardless of whether they have been formally charged with a war crime.

In re Guantanamo Detainee Cases, 355 F. Supp. 2d 443, 447 & n.7 (D.D.C. 2005).[6] Further, although Judge Leon referenced the November 13, 2001 Order in his opinion in Khalid and Boumediene, these references do not reflect an independent finding of the Court or material

---

[5] See Respondents' Response to Petitions for Writ of Habeas Corpus and Motion to Dismiss or for Judgment as a Matter of Law and Memorandum in Support in Hicks v. Bush, No. 02-CV-0299 (CKK), et al. (Oct. 4, 2004), at 7, n.6 ("Many of the petitions discuss extensively an Order of the President dated November 13, 2001, as though the detentions at issue in these cases were pursuant to that Order. However, with respect to most of the petitioners herein, the November 13, 2001 Order is a red herring because it applies only to a subset of detainees whom the President has determined are 'individual[s] subject to this order.' The detention of the vast majority of the petitioners herein, who have not been so designated, is not pursuant to the November 13, 2001 Order but, as explained infra, pursuant to the President's general authority as Commander in Chief, the congressional Authorization for Use of Military Force, and the international law of war.") (internal citations omitted).

[6] The D.C. Circuit's decision in Hamdan v. Rumsfeld, 415 F.3d 33 (D.C. Cir. 2005), cert. granted, 74 U.S.L.W. 3108, 74 U.S.L.W. 3284, 74 U.S.L.W. 3287 (U.S. Nov. 7, 2005) (No. 05-184), addressed claims regarding the legality of the November 13, 2001 Order in permitting trials of certain detainees by military commission.

ground of the Court's decision, which held that the Constitution vests powers relating to armed conflict in the political branches, that the AUMF authorized the President to use necessary and appropriate force against (i.e., to capture and detain) enemy combatants, and that the President's detention powers under the AUMF could not be cabined or narrowly limited in the manner urged by petitioners. See Khalid v. Bush, 355 F. Supp. 2d 311, 317-20 (D.D.C. 2005).[7]

Thus, because petitioner Saib has not been designated to be subject to the November 13, 2001 Order by the President, petitioners' claims based on the November 13, 2001 Order are irrelevant to respondents' detention of petitioner Saib and do not warrant a modification of the stay in this case.

Similarly, petitioners' claim that the conditions of Mr. Saib's confinement at Guantanamo Bay entitle him to "an injunction from this Court enjoining Respondents from further obligating or expending funds appropriated under [PL 109-13] for the construction, maintenance or operation of prisons, camps or other facilities at Guantanamo Bay," see Petition, ¶ 100, does not merit a modification of the stay pending the appeals of Khalid and In re Guantanamo Detainee Cases. PL 109-13 is a defense appropriations law that contains no private right of action that would entitle petitioners to injunctive relief of this nature. The only possible basis for a cause of action under PL 109-13 would be pursuant to the APA, with perhaps some showing as to taxpayer standing under the U.S. Constitution,[8] and the issue of whether aliens detained at

---

[7] Judge Leon's references to the November 13, 2001 Order are most reasonably read as merely tracking petitioners' (albeit incorrect) framing of the issues in those cases, as is customary upon adjudication of a motion to dismiss.

[8] Respondents are not conceding that a cause of action based on PL 109-13 could in fact be maintained under the APA or the Constitution. That is an issue that can be addressed at a future date, but in any event, is well within the scope of the stay imposed in this case.

Guantanamo Bay have any rights pursuant to the APA or the U.S. Constitution are presently the subject of the appeals in <u>Khalid</u> and <u>In re Guantanamo Detainee Cases</u>.[9]  <u>See</u> <u>supra</u> at 3.  Thus, petitioner Saib's rights based on PL 109-13, if any, will be determined or affected by the outcome of the appeals in <u>Khalid</u> and <u>In re Guantanamo Detainee Cases</u>.  This case is properly stayed pending the outcome of those appeals, and petitioners have presented no legitimate basis for modification of the stay.

**II.     Factual Returns Should Not Be Required During the Pendency of the Stay**.

Petitioners also insist that a factual return[10] pertaining to petitioner Motai Saib should be submitted in this case, despite the fact that this case is stayed pending the appeals of <u>Khalid</u> and <u>In re Guantanamo Detainee Cases</u>, which will address the core issues in this case and, thus, determine how this case should proceed, and whether a factual return should be required, if at all.  It makes no sense for the government to process and submit a factual return with respect to petitioner when the D.C. Circuit will be considering the proper scope of these habeas proceedings, including whether the claims can be dismissed without reference to specific factual returns.  <u>See</u> <u>Khalid</u>, 355 F. Supp. 2d 311 (dismissing petitioners' claims in their entirety).  Even if counsel had access to a factual return, they would not be able to share classified information in

---

[9] Judges Leon and Green agreed that detainees at Guantanamo Bay do not have viable claims arising out of the APA.  <u>See</u> <u>Khalid</u>, 355 F. Supp. 2d at 325, n.19; <u>In re Guantanamo Detainee Cases</u>, 355 F. Supp. 2d at 480-81.

[10] A factual return for a petitioner in a Guantanamo detainee case typically has consisted of the record of proceedings before the Combatant Status Review Tribunal that confirmed petitioner's status as an enemy combatant properly subject to detention.  The factual return is separate from briefing on legal issues in the cases.  Factual returns include both classified and unclassified material.

the return with petitioner. Thus, there is no reason why counsel need access to a factual return at this time.[11]

Moreover, the submission of factual returns which, in any event, may ultimately be unnecessary, burdens the government's resources and risks the inadvertent disclosure of classified information. Each factual return must be obtained from the Department of Defense ("DoD"), and then reviewed by agencies who provided source information to DoD to ensure that information disclosed to counsel in the returns is in accordance with all applicable statutes, regulations and Executive Orders. Respondents must then prepare both public and classified versions of the factual returns for submission to the Court and counsel. Because each return can range from dozens to hundreds of pages, depending upon the circumstances, this review and redaction process is a significant and time-consuming undertaking. Thus, respondents face an immense logistical burden to process and submit the returns, especially on the short, simultaneous schedules being requested by petitioners in the various cases. Further, submission of these returns vastly expands access to classified information contained in the returns, thereby increasing the risks of inadvertent or other disclosure or compromise of the information. These burdens and risks, however, could be rendered completely unnecessary, depending on the outcome of the appeals. Cf. Order Denying Motion for Reconsideration of Order Granting Stay Pending Appeal in In re Guantanamo Detainee Cases, 355 F. Supp. 2d 482 (staying cases so as to

---

[11] In this vein, various Judges of this Court have declined to require factual returns during the pendency of the stay. See, e.g., Sliti v. Bush, No. 05-CV-0429 (RJL) (dkt. no. 5); Imran v. Bush, No. 05-CV-0764 (CKK) (dkt. no. 6); Attash v. Bush, No. 05-CV-1592 (RCL) (dkt. no. 12).

avoid expenditure of "substantial resources" and imposition of "significant burdens" that might not be necessary depending on outcome of appeal).

Petitioners' dismissive treatment of the needless expenditure of judicial and litigation resources that would result from submission of factual returns, ignores the cascade effect that would follow from requiring the submission of a factual return in this case. Presently, there are approximately 185 habeas cases pending on behalf of over 340 petitioners. A decision to allow submission of factual returns to go forward pending the resolution of the appeals could precipitate a chain reaction – the scores of petitioners in other pending and future Guantanamo Bay detainee habeas cases, seeking parity of treatment, would request the Court to allow access to factual returns in those cases, perhaps even by lifting or modifying stays that have already been entered, as petitioners seek to do here. Such motions have been filed recently. See, e.g., Motion for Factual Returns in Aziz v. Bush, No. 05-CV-492 (JR) (dkt. no. 28). Further, the decision to require production of a factual return would likely need to be revisited or relitigated, and may be shown to have been altogether unnecessary, once the Court of Appeals provides guidance regarding handling of the habeas claims of Guantanamo Bay detainees such as petitioners. Thus, in the interest of efficiency of judicial and litigation resources, as well as to minimize administrative burdens, this Court should hold the submission of a factual return in abeyance pending the outcome of the appeals of the decisions by Judges of this Court in the other Guantanamo Bay detainee cases.

Though the submission of a factual return should not go forward at all, in the event the Court orders submission of a factual return, however, it could only be done pursuant to a coordinated and reasonable schedule, taking account of the fact that petitioners in all the recently

filed cases are seeking factual returns and given the logistical burdens posed by an undertaking to produce returns in the cases.  Given these circumstances, a schedule for the rolling production of a factual return in this case (and potentially other cases) over anything less than the next 10 to 12 weeks would be unreasonable.  Indeed, respondents currently have at least ten factual returns due in other cases over the next thirty days.  Therefore, if the Court determines that submission of a factual return is appropriate in this case, respondents request that they been given between 90 and 120 days to submit the factual return, as Judges of this Court have granted respondents in a number of other Guantanamo Bay detainee cases.  See e.g., Al-Joudi, No. 05-CV-0301 (GK) (dkt. no. 26) (imposing 90-day schedule); Al-Wazan, No. 05-CV-0329 (PLF) (dkt. no. 37) (imposing 90-day schedule); Al-Anazi, No. 05-CV-0345 (JDB) (dkt. no. 21) (imposing 120-day schedule); Ameziane, No. 05-CV-392 (ESH) (dkt. no. 12) (imposing 90-day schedule); Qayed, No. 05-CV-0454 (RMU) (dkt. no. 5) (imposing 90-day schedule); Battayav, No. 05-CV-0714 (RBW) (dkt. no. 12) (imposing 120-day schedule).

## CONCLUSION

For the reasons stated, the Court should not modify the August 1, 2005 Order staying proceedings in this case pending related appeals, and petitioners' request for a factual return should be denied.

Dated: December 15, 2005          Respectfully submitted,

                                  PETER D. KEISLER
                                  Assistant Attorney General

                                  KENNETH L. WAINSTEIN
                                  United States Attorney

DOUGLAS N. LETTER
Terrorism Litigation Counsel

　/s/ Preeya M. Noronha
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.  Room 7144
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents