IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MOTAI SAIB,<br>　*et al.*,<br><br>　　　　Petitioners,<br><br>v.<br><br>GEORGE W. BUSH,<br>　President of the United States,<br>　*et al.*,<br><br>　　　　Respondents. | Civil Action No. 05-CV-1353 (RMC) |

### MEMORANDUM IN SUPPORT OF PETITIONER'S MOTION TO ENFORCE PROTECTIVE ORDER AND FOR ORDER COMPELLING COUNSEL ACCESS

Petitioner Motai Saib (a/k/a Sayab, Mutij Sadiz Ahmad) is an Algerian detainee held by the United States Government at Guantanamo Bay Naval Station ("Guantanamo Bay"). He has challenged his detention by filing a petition for habeas corpus on his own behalf and through his Next Friend, Bisher Al-Rawi, also a detainee at Guantanamo Bay.

The Amended Protective Order and Procedures for Counsel Access to Detainees (the "Protective Order") was entered in this case on August 1, 2005.[1] Counsel obtained the requisite security clearances and requested access to Petitioner Saib. On January 25, 2006, Respondents filed a Motion for Order to Show Cause why the petition for habeas corpus should not be dismissed for lack of proper "Next Friend" standing.

---

[1] The Protective Order was first issued on November 8, 2004, in *In re Guantanamo Detainee Cases*, 344 F. Supp. 2d 174 (D.D.C. 2004).

Based on the related filing of the next friend challenge, Respondents have refused counsel access to Petitioner.

Petitioner has been detained and held incommunicado for more than four years. Over sixteen months ago, he indicated to a fellow detainee who is represented by counsel that he wishes to challenge his potentially indefinite detention without charge. *See* Apr. 20, 2006 Decl. of J. Triplett Mackintosh at ¶ 9-11 (Ex. A); Attachment to July 1, 2005 Petition for Habeas Corpus (Jan. 4, 2005 Letter from Bisher Al-Rawi to Brent Michum, Esq. at 3) (Ex. B) ("This is a list of those who want legal assistance and representation: 1) Matai Saib . . . ISN 288"). As a result of that request, undersigned counsel filed a petition for habeas corpus on Petitioner's behalf and, alternatively, through his Next Friend, Bisher Al-Rawi. July 1, 2005 Petition for Habeas Corpus (Excerpt from Petition, Ex. C at 1-2). Counsel also arranged to meet with Petitioner's Next Friend, Bisher Al-Rawi, during a visit to Guantanamo in February 2006. *See* Ex. A. at ¶ 2. During that visit, Al-Rawi confirmed Petitioner's direct request for representation, as well as Al-Rawi's understanding of, and desire to serve as, a next friend. *Id*. at ¶¶ 9-11, 16-18. Despite Petitioner's alternatively-pled petition and request for counsel, entry of the Protective Order in this case, ongoing visits to Guantanamo by counsel for other detainees and counsels' visit with Al-Rawi and resulting declaration, Respondents continue to refuse to allow counsel access to Petitioner, leaving Petitioner no option but to seek enforcement of the Protective Order entered by this Court.

The Supreme Court ruled in June, 2004 that Guantanamo Bay detainees are entitled to habeas corpus review by United States District Courts. *Rasul v. Bush*, 542

U.S. 466, 484 (2004). In addition, detainees are entitled representation by legal counsel. *Rasul*, 542 U.S. at 484; *Al Odah v. United States*, 346 F.Supp. 2d 1, 7 (D.D.C. 2004). "[T]his Court has the authority to "craft the procedures necessary' to enforce that right." *Adem v. Bush,* 2006 WL 751309, *4 (D.D.C. March 21, 2006).

Further, this Court (Kay, J.) has determined that "the Protective Order provides the mechanisms by which detainees may access the counsel to which they are entitled." *Id.* at *7. It is irrelevant whether Petitioner filed a direct petition or a 'next friend' petition, because the Protective Order "does not distinguish between cases filed by a 'next friend' and cases filed directly." *Doe v. Bush*, 05-CV-1704 (May 11, 2006) (Dkt. No. 33) at 8; *see also Said v. Bush*, 05-CV-2384 (May 23, 2006) (Dkt. No. 23) at 5-6. This Court has "inherent power to enforce its own lawful orders." *Doe*, 05-CV-1704, at 10 (citing *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006)). As in *Adem, Doe,* and *Said,* pursuant to the Protective Order, Petitioner is entitled to meet with his legal counsel.

Finally, the enactment of the Detainee Treatment Act of 2005 should have no impact on the Court's determination of this Motion. "The question of when, and under what circumstances the existing Protective Order permits [Petitioner] to meet with his lawyer has no bearing on the question of which Court has jurisdiction to review the merits of Petitioner's challenge to his detention." *Id.*; *see also Said*, 05-CV-2384, at 11. This Court has already concluded that "the Protective Order remains in effect ... in each of the Guantanamo *habeas* cases in which it was entered," and that detainees are entitled to counsel regardless of what procedure is applied. *See Adem*, 2006 WL 751309, at *8. It is therefore proper for the counsel visits to proceed in this case.

3

Accordingly, this Court is respectfully requested to grant Petitioner's Motion To Enforce Protective Order and for Order Compelling Counsel Access

Dated: May 26, 2006

    Respectfully submitted,

/s  *Anne J. Castle*
Anne J. Castle (Colorado State Bar #11202)
Scott S. Barker (Colorado State Bar #11177)
J. Triplett Mackintosh (Colorado State Bar #22359)
William E. Murane (Colorado State Bar # 2676)
Douglas L. Abbott (Colorado State Bar #18683)
Danielle R. Voorhees (Colorado State Bar # 35929)
Hamid M. Khan (Colorado State Bar #34139)
Barry C. Bartel (Colorado State Bar #23040)
Jonathan S. Bender (Colorado State Bar #33979)
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Telephone: (303) 295-8000

Of Counsel
Barbara J. Olshansky (New York State Bar #3635)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway
New York, New York 10012
Telephone: (212) 614-6439

**ATTORNEYS FOR PETITIONER**

## CERTIFICATE OF SERVICE

I certify that on May __, 2006, I served a copy of the foregoing document to the following as indicated below:

United States Department of Justice
c/o Preeya Noronha *via electronic filing*
Peter D. Keisler
Joseph H. Hunt
Kenneth L. Wainstein
Douglas N. Letter
Vincent M. Garvey
Terry M. Henry
James J. Schwartz
Robert J. Katerberg
Nicholas J. Patterson
Andrew I. Warden
Edward H. White
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W. Room 7144
Washington, DC  20530
preeya.noronha@usdoj.gov


/s/ [signature]
Holland & Hart LLP


3557239_1.DOC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOTAI SAIB,<br>    *et al.*,<br>        Petitioners,<br><br>v.<br><br>GEORGE W. BUSH,<br>    President of the United States,<br>    *et al.*,<br><br>        Respondents. | Civil Action No. 05-CV-1353 (RMC) |

## **DECLARATION OF J. TRIPLETT MACKINTOSH**

I, J. Triplett Mackintosh, declare that the following statements are true to the best of my knowledge, information, and belief:

1. I am an attorney with the firm of Holland & Hart LLP, counsel for Petitioner Motai Saib ("Petitioner") in the above-captioned action. I offer this Declaration in support of Petitioner Saib's Petition for Writ of Habeas Corpus.

2. On February 11, 2006, Hamid Khan, another attorney with Holland & Hart LLP, and I met with Petitioner's Next Friend, Mr. Bisher al Rawi ("al Rawi"), a detainee at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"). The purpose of the meeting was to discuss al Rawi's role as Petitioner's next friend.

3. On completion of our meeting, the Department of Defense (DOD) sent our attorney notes from Guantánamo to the secure work facility for habeas counsel in Washington, D.C. We submitted the notes for review by Privilege Team and received our unclassified notes from the Court Security Office.

**Exhibit A**

4. This Declaration is based upon information gained during our meeting with al Rawi, as reflected in our unclassified notes.

### AL RAWI'S BACKGROUND

5. Al Rawi speaks English and Arabic fluently. He lived in the United Kingdom for nineteen years, and has family in the United States.

6. Al Rawi attended the University of London in London, England for 2 and a half years.

7. Al Rawi is familiar with the U.K. common law legal system. He appeared in an English court for a speeding violation in 1988; later, he personally testified in open court concerning two car accidents and most recently, was closely involved in the legal proceedings involving Abu Qatada, a Muslim cleric in London. All of these experiences gave al Rawi a significant understanding of the principles of an adversarial legal system based on English common law.

8. Al Rawi explained that, as a result of this exposure to the U.K. legal system, he has an understanding of fundamental principles of the U.S. legal system, including the principle that legal representation is central to success in the U.S. legal system. He also expressed his understanding of the meaning of "next friend," as that term is used in habeas jurisprudence.

### PETITIONER'S EXPRESS REQUESTS FOR ASSISTANCE SECURING COUNSEL

9. Al Rawi reported that he personally knows Petitioner and has prayed with and spoken with Petitioner. Petitioner approached al Rawi to discuss issues regarding the legal process and securing representation.

10. Al Rawi explained that Petitioner requested, both in writing and orally, that al Rawi get word to al Rawi's attorney that Petitioner wanted legal representation. Specifically, Petitioner wrote a note, on a slip of paper, unequivocally stating that he wanted a lawyer and requesting that al Rawi assist him in getting one.

11. Al Rawi explained that he complied with this request by notifying his attorney of Petitioner's request.

## AL RAWI'S CONTACT WITH FELLOW DETAINEES

12. Al Rawi explained that during detainment at Guantanamo, he and other detainees were housed in groups of 48 cells. The barriers between the cells were of a rigid, but widely segmented, wire mesh—limiting physical contact, but allowing detainees to see and speak with one another.

13. Al Rawi explained it was not difficult for other detainees to hear and observe him.

14. Periodically, al Rawi discussed legal issues with other detainees housed within the same block. His experience with the U.K. legal system and his university level education in the United Kingdom allowed him to answer questions of fellow detainees.

15. Al Rawi explained that he was specifically sought out for advice by other detainees because of his (1) English fluency; (2) Western education; and (3) experience and understanding of the legal system - including the benefits of being represented by counsel. He offered to facilitate communication of requests for counsel on behalf of those detainees requesting representation.

## AL RAWI'S UNDERSTANDING OF THE NEXT FRIEND ROLE

16. Al Rawi expressed several motivations to serve as Petitioner's "next friend." These include al Rawi's (1) general experience with and knowledge of the U.K. common law legal system which is parallel to the U.S. system; (2) personal experience with the U.K. common law system, which underscored for him the advisability of having competent counsel; and (3) expressed personal relationship with Petitioner, based on a number of factors including shared circumstances, religious faith and language.

17. Al Rawi explained that nothing of value was offered by Petitioner for al Rawi's willingness to serve as his "next friend," and that he did so freely out of genuine concern for Petitioner.

18. Al Rawi's offer of himself as "next friend" is consistent with this other actions on behalf of fellow detainees. He reports that his English language ability drew detainees to him for counsel. He reported that on several occasions he interacted on behalf of certain detainees who had issues and a need for communication with guards.

19. I declare, under penalty of perjury, that the foregoing is true and correct.

Executed this 28 day of April, 2006 in Denver, Colorado.

_____
J. Triplett Mackintosh

3537712_1.DOC

Bisher AL-Rawi
Guantanamo Bay - Cuba

Mr. Brent Mickum
Keller and Hickman LLP
Washington D.C 20001

4-1-2005 (4th January)

Dear Brent:

Here I am again writing to you. However it's a new year. It is quite strange to put todays date on this letter, usually I would be in a much nicer invierment during this special time of year.

I had send you a letter few days ago, but as usual I had forgotten some things, hence this letter. Also during the last few day I read the Transcript from December 1st's hearing. I have to say I never thought that I would read it. After starting reading, I didn't leave it until I was finished with it. I have to say if this is what you usually do (ie go to court etc) I must say you have a very interesting Job.

I found the Transcript to be very educational and informative. Although I did not understand a lot of the arguments and case referals, never the less and under the circumstances it's been very enjoyable read. The one down side in this story, if things were to go wrong, it'll be on our head!! (Detainees Head)

I would like to first ask you weather you have recieved any of the letters I had written on behalf of the I think six Detainees who had requested legal representation. Also if you have recieved any of my letters which had the name, number etc. of these detainees. I'll be gratefull if you can provide me with an answer for the above.

I had read to the Detainees ~~the letters~~ (only the parts ~~sent~~ relevant to them) and incorage ~~them to give~~ names to you

Exhibit B

46

in the hope that they will be assisted in obtaining legal help. A number of them forwarded their details to me so I can send them to you, and I am enclosing those details with this letter.

However there are some points worth noting with regards to this matter:

- I only was able to inform the Block I am at, which has about 40 detainees.
- I am unable to provide this information to others at the camp because of the intentional restriction and isolation from the other ( eg: Talking to other Blocks will result in a punishment)

The is a lot of mistrust between the detainees and everybody else. This is the result of continouse lies and deception from Attorities here. They have lied about almost everything and now Detainees no longer beleeve any thing they say. This was one of the main problems we faced in the Tribunals.

Detainees are afraid that there will not be the appropriate level of Confedentionality between Lawyer and Detainee ( There is one example were what seem to be a Lawyer, who started using an Interegators type of questioning and who has put to the detainee accusation, plus the detainee feels certin that he is lying to him with regards a number of things)

- There is also strong dougt about these letters, and weather they will reach you. Bearing in mind that the previous letters which were send to you have been send some four or five months ago, and todate no one has recieved any reply.

The above are some of the important resons that are hindering Detainee's contact with the outside world and with Lawyers. Also as I mentioned in one of my previous letters. If I was found with the names of other detainees I am certin to face punishment. Please try and understand the deficulty of hope that these problems

"UNCLASSIFIED"

This is a list of those who want legal assistance and representation:

Note: ISN is one the initials for the detainee number at GTMO

1)
Name in English: MOTAI SAIB
Name in Arabic: مطاى سايب
ISN: 288 (Two hundred and eighty eight)
He is from Algeria. He does not want to return to Algeria because of fear for his safety.

2)
Name in English: ABDUL RAZAK IKTIAR MOHAMMED
Name in Arabic: عبد الرزاق إختيار محمد
ISN: 1043 (One thousand and fourty three)
He is from Afganistan.

3) Name in English: FAHMI ABDULLAH AL-TAWLAQI
ISN: 688 (Six hundred and eighty eight)
He is from the Yemen. He does not want to go back to the Yemen because of fear for his safety.

4) Name in English: RAFIQ BIN BASHIR BIN JALLUL ALHAMI
ISN: 892 (eight hundred and ninty two)
He is from Tunisia (in North Africa). He does not want to go back to his country because of fear for his safety.

5) Name in English: WAHIDOF THABIT ABDUL MOKIT WELLY KHAN WITSH
Name in Arabic: واحدوف ثابت عبد المقيت ولي خان وتش
ISN: 090 (Ninty)
He is from TAGIKISTAN (used to be part of the USSR)
He does not want to return to [illegible] because of fear for his safety.

"UNCLASSIFIED"

4/6

1) Name in English: ABRAHIM OTHMAN ABRAHIM EDRIES
   Name in Arabic: ابراهيم عثمان ابراهيم ادريس
   ISN: 0036 (Thirty six)
   He is from the Sudan (in Africa)
   He does not want to return to his country because of fear for his safety.
   He has written many many letters to his family. However he has not received any thing back. He needs help in contacting his family. He doesn't know weather his family is not writing or Authorities here are with holding his letters.

2) Name in English: ~~AHMAD AB~~ MOHAMMED ABDUL RAHMAN
   Name in Arabic: محمد عبد الرحمن
   ISN: 894 (eight hundred and ninty four)
   He is from Tunisia (North Africa). He does not want to return to his country because of fear for his safety.

3) Name in English: AHMAD ABDULLA ALWAZAN    (He has write to you before)
   Name in Arabic: احمد عبد الله الوزان
   ISN: 197 (One hundred and ninty seven).
   He is from MAROCCO (North Africa). He does not want to return to his country because of fear for his safety.
   The spelling here may be different to that in his letter to you. But the spelling in his letter to you is the correct spelling.

4) Name in English: ABDUL RAHMAN AZIZ KHAN    (He has write to you before)
   Name in Arabic: عبد الرحمن عزيز خان
   ISN: 357 (Three hundred and fifty seven).
   He is from Afganistan from the province of Zabul.
   The spelling here may be different to that in his letter to you is the correct one.

"UNCLASSIFIED"

10) Name in English: SALIM ~~MOHAMED~~ MOHAMMED ADAM BIN AMIR (He has written to you before)
ISN: 710 (seven hundred and ten)
He is from the Sudan (Africa)
The spelling in his letter to you is more correct than the spelling here.

11) YOUSIF ABDULLA ALRUBISH (He has written to you before)
ISN: 109 (one hundred and nine)
The spelling of his name in his letter to you is more correct than it is here.
He is from SAUDI ARABIA.

12) Name in English: ABDUL ~~NAS~~ NASIR KHANTOMANI
ISN: 307 (Three hundred and seven).
He is from Syria
And his son
Name in English: MOHAMMED KHANTOMANI
ISN: 312 (Three hundred and twelve)

They had written to you before, their details in those letter to you is more correct than they are here.

- I am unable to be sure of the spelling of the Detainees names, because I do not have that information. If you have received previous letter that has the information, please know in those letters the spelling of names is more correct and the information is also more accurate.

**"UNCLASSIFIED"**

PTO

6/6

I have just received your letter dated 30th December 2004.

Please know and let my family know, that during the last few months I have been writing to them may two or three times per month. I letters are addressed to the London address. I would seem the Authorities have are not sending the letters punctually. What a surprise ???

With regards to "mistreatment". Would that be only at GTMO or through out the experience? AND I'll try to get something to you the next few days.

- Please know that my self and Jamil are NO longer next to each other. I can not get in touch with him nor can I convey any messages.

Thank you very much for all that you are doing for us.

With many thanks.
Your sincerely
Bisher Al-Rawi

UNCLASSIFIED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED
JUL 0 ⬚ 2005
HOLLAND & HART
ANNE J. CASTLE

MOTAI SAIB, )
    Detainee, )
    Guantánamo Bay Naval Station )
    Guantánamo Bay, Cuba; )
)
BISHER AL-RAWI, )
    as Next Friend of MOTAI SAIB )
)
*Petitioners/Plaintiffs*, )
)
v. )
)
GEORGE W. BUSH, )
  President of the United States )
  The White House )
  1600 Pennsylvania Ave., N.W. )
  Washington, D.C. 20500; )
)
DONALD RUMSFELD, )
  Secretary, United States )
  Department of Defense )
  1000 Defense Pentagon )
  Washington, D.C. 20301-1000; )
)
ARMY BRIG. GEN. JAY HOOD, )
  Commander, Joint Task Force - GTMO )
  JTF-GTMO )
  APO AE 09360; and )
)
ARMY COL. MIKE BUMGARNER, )
  Commander, Joint Detention )
  Operations Group - JTF-GTMO, )
  JTF-GTMO )
  APO AE 09360, )
)
    *Respondents/Defendants*. )

CASE NUMBER 1:05CV01353

JUDGE: Rosemary M. Collyer

DECK TYPE: Habeas Corpus/2255

DATE STAMP: 07/07/2005

## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Motai Saib ("Saib") seeks a Writ of Habeas Corpus. A citizen of Algeria, he acts on his own behalf and through his Next Friend, Bisher Al-Rawi, his co-

1

Exhibit C

detainee and friend. He is a civilian wrongly classified as an "enemy combatant" by the President of the United States, and is being held virtually incommunicado in military custody at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo Bay"), without basis, without charge, without access to counsel, and without being afforded any fair process by which he might challenge his detention. Petitioner Saib is being held by color and authority of the Executive, and in violation of the Constitution, laws and treaties of the United States as well as customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioner Saib or to establish in this Court a lawful basis for Petitioner Saib's detention, and provide related injunctive and declaratory relief.

Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war, or under the November 13, 2001 Military Order, Respondents George W. Bush, President of the United States, Donald H. Rumsfeld, U.S. Secretary of Defense, Army Brigadier General Jay Hood, Commander of Joint Task Force-GTMO, and Army Colonel Mike Bumgarner, Commander, Joint Detention Operations Group, Joint Task Force-GTMO, are either ultimately responsible for or have been charged with the responsibility of maintaining the custody and control of the detained Petitioner at Guantánamo Bay.

## SECTION I
## JURISDICTION AND VENUE

1. Petitioners invoke the Court's jurisdiction under 28 U.S.C. §§ 2241(c)(1), (c)(3) and 2242. Petitioners further invoke this Court's jurisdiction under: 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I and II of the United States