UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **MOTAI SAIB**, *et al.* | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) ) | No. 1:05-CV-1353 (RMC)(AK) |
| **GEORGE BUSH** *et al.*, | ) ) ) | |
| Respondents. | ) ) ) | |

## MEMORANDUM ORDER

Pending before the Court are Petitioner's Motion to Enforce Protective Order and for Order Compelling Counsel Access, ("Mot.") [26], Respondents' Notice in Response [29][1] and Petitioners' Reply [30].[2] The Petitioner, Motai Saib (a/k/a Sayab, Mutij Sadiz Ahmad) is an

---

[1] Respondents noted the trial Court's stay of "all action" in the above-captioned case, pending resolution of the jurisdictional issues raised by the Detainee Treatment Act of 2005 ("DTA"). The jurisdictional issue has arguably been resolved by *Hamdan v. Rumsfeld*, 126 S.Ct. 2749, 2762-69 (2006). Additionally, since entry of the stay in this case, Respondents have sought and been granted relief from the Court, specifically with regard to Respondents' proposed procedures for reviewing documents seized from detainees in connection with the investigation of three suicides in June 2006. *See* Amended Mem. Order of Sept. 20, 2006.

[2] On November 2, 2005, in recognition of "the need to promote orderly and efficient case management of all *habeas* petitions . . . relating to the rights of [Guantanamo] detainees," Judge Kessler, acting as Chair of the Calendar and Case Management Committee referred all motions "pertaining to interpretation or construction of any protective order" entered in any of the Guantanamo *habeas* cases to the undersigned for resolution pursuant to LCvR 72.2(a). A party may seek reconsideration of a ruling by a magistrate judge within 10 days after being served with the magistrate judge's order. LCvR 72.2(b). Rulings issued by a magistrate judge pursuant to LCvR 72.2 are reviewed by the district court judge, in this case Judge Collyer, on a "clearly

Algerian citizen who has been detained by the United States Government at the Guantanamo Bay Naval Station for over four years. Petitioner claims that Respondents have refused to permit him to meet with an attorney as required by the Protective Order[3] and several previous court orders granting counsel access under virtually identical circumstances. Respondents contend that Petitioner's oral request for counsel is insufficient, and insist that Petitioner submit written evidence of his desire to challenge his detention before he will be allowed to meet with a lawyer.

I.   *Interpretation of the Protective Order*

Under the Protective Order, counsel who represent a detainee must provide evidence of that representation. *See* Revised Procedures for Counsel Access, ¶ III.C, *attached as* Exhibit A to the Amended Protective Order. With respect to the narrow question of the timing of counsel's submission of that evidence, Respondents raise the same objections they previously raised under virtually identical circumstances. This Court has already rejected Respondents' arguments many times over. *See Adem v. Bush*, 425 F. Supp. 2d 7, 20-23 (D.D.C. 2006), *aff'd*, No. 05-723, 2006 WL 1193853 at *3-7 (D.D.C. April 28, 2006); *Kabir v. Bush*, 05-1704 (D.D.C. May 11, 2006) (memorandum order granting motion to compel counsel access); *Said v. Bush*, 05-2384 (D.D.C. May 23, 2006) (same); *Kiyemba v. Bush*, 05-1509 (D.D.C. June 29, 2006) (same); *Zalita v. Bush*,

---

erroneous" or "contrary to law" standard. LCvR 72.2(c).

[3]In recognition of the security concerns attendant to the Guantanamo *habeas* cases, the Protective Order sets procedures that counsel must follow in order to meet and communicate with their clients. The Protective Order was initially approved and entered by Judge Joyce Hens Green in *In re Guantanamo Cases*, 344 F. Supp. 2d 174 (D.D.C. 2004), following intense negotiation and litigation over its terms. *See Adem v. Bush*, 425 F. Supp. 2d 7, 10-14 (D.D.C. 2006) (reviewing history of negotiation and entry of Protective Order), *aff'd*, No. 05-723, slip op., 2006 WL 1193853 (D.D.C. April 28, 2006). It has since been entered in the vast majority of Guantanamo *habeas* cases pending before the District Court, including the instant case. *See* Minute Order of August 1, 2005.

05-1220 (D.D.C. July 21, 2006); *Alkhemisi v. Bush*, 05-1983 (D.D.C. Jul 21, 2006); *Qasim v. Bush*, 05-1779 (D.D.C. August 2, 2006); *Thabid v. Bush*, 05-2398 (D.D.C. August 2, 2006). Every District Court Judge to reach the issue has upheld this interpretation of the Protective Order.  *See Razakah v. Bush*, 05-2370 (D.D.C. May 18, 2006) (EGS) (order granting motion for access to counsel, notwithstanding Respondents' pending challenge to Petitioner's next friend standing, based on substantially the same reasons articulated in *Adem v. Bush*); *see also Mohammon v. Bush*, No. 05-2386, Order at 4 n.5 (D.D.C. June 27, 2006) (RBW) (rejecting government's argument that allegedly defective next friend standing strips court of authority to grant access to counsel); *Adem v. Bush*, No. 05-723, 2006 WL 1193853 at *3-7 (D.D.C. April 28, 2006) (RWR) (denying motion for reconsideration and affirming order granting access to counsel); *Thabid v. Bush*, 05-2398 (D.D.C. August 17, 2006) (ESH) (denying Respondents' motion for order to show cause why case should not be dismissed for lack of proper next friend standing and affirming order granting access to counsel); *Kabir v. Bush*, 05-1704 (D.D.C. August 25, 2006) (JR) (affirming order granting access to counsel); *Kiyemba v. Bush*, 05-1509 (D.D.C. August 7, 2006) (RMU) (same).

The Court sees no basis to depart from its previous rulings.  Briefly, a plain reading of the Protective Order clearly dictates that Petitioners' counsel must submit the requisite evidence of authority to represent that detainee within 10 days of counsel's second visit.  *See Adem*, 425 F. Supp. 2d at 21-23*; Razakah v. Bush*, 05-2370, Order at 4-5 (D.D.C. May 18, 2006) (EGS).  The Protective Order does require counsel for a detainee to take certain steps before they may meet with a detainee-client.  Counsel must obtain the necessary security clearances, sign a memorandum of understanding acknowledging counsel's agreement to abide by the terms of the

3

Protective Order, and provide DoD with a "Notification of Representation" that includes counsel's licensing information, business contact information and the name of the detainee being represented by counsel. *See* Revised Procedures for Counsel Access, ¶¶ III.A, B & C.1. The Protective Order does not, however, require a detainee to submit the equivalent of a signed retainer before he may meet with a lawyer. *See Adem*, 2006 WL 1193853, at *7 (D.D.C. April 28, 2006) ("[r]equiring a Guantanamo detainee to identify a specific lawyer from among all the volunteer lawyers -- most of whom are unknown to the detainee before a meeting -- is a meaningless exercise. It would be unconscionable to tether a detainee's access to counsel to such an unworkable prerequisite").

More than eighteen months ago, Petitioner told his fellow detainee, Bisher Al Rawi, that he wanted to challenge his detention and asked Al Rawi for help getting a lawyer. (*See* Decl. of J. Triplett Mackintosh ¶¶ 9-11, Mot., Ex. A; Letter from Bisher Al Rawi to Mr. Brent Mickum ("Al Rawi Letter") at 1-2, 3, Mot., Ex. B.) Petitioner sought help from Al Rawi because he speaks fluent English and has experience with the western legal system. (Mackintosh Decl. ¶¶ 5, 15.) Al Rawi personally knows the Petitioner - they prayed together and were housed in the same cell block - and Petitioner personally approached Al Rawi to seek his help in obtaining a lawyer. (*Id.* ¶¶ 9-12.) Absent evidence that Petitioner's request is not genuine,[4] he is entitled to meet with his

---

[4]Respondents have provided no such evidence. Additionally, the Court notes that in a related case in which Respondents had similarly refused the Petitioner access to counsel, the Court was able to confirm Petitioner's request for representation purely by accident. *See Muhammed v. Bush*, 05-2087 (RMC). The Petitioner in that case, Dr. Abu Muhammed, a/k/a Fethi Boucetta, is a non-enemy combatant (NEC) who similarly filed his *habeas* petition through a fellow detainee, Jamal Kiyemba. Respondents challenged Kiyemba's standing to serve as Boucetta's 'next friend' and prohibited Boucetta from meeting with counsel. (*See* Motion for Order to Show Cause, *Muhammed v. Bush*, 05-2087, Nov. 18, 2005, Dkt. No. 8.)
Respondents' challenge to Kiyemba's next friend standing was rendered moot when

lawyer, in part so he may obtain the very authorization of representation that Respondents insist be provided prior to any visits. *See Rasul v. Bush*, 542 U.S. 466, 483-84 (2004) (holding Guantanamo Bay detainees have the right to challenge their detention in federal court); *Al Odah v. United States*, 346 F. Supp. 2d 1, 7-8, 11 n.12 (finding Guantanamo detainees are entitled to counsel in order to ensure meaningful access to the courts); *Mohammon v. Bush*, 05-2386, Order at 3 (D.D.C. June 27, 2006) (RBW) (explaining importance of access to counsel to ensure "the efficacy of the Great Writ of habeas corpus"). If, within 10 days of counsel's second visit, the requisite evidence is not forthcoming, Respondents motion to dismiss for lack of proper "next friend" standing will be ripe.

---

Boucetta was able to communicate with counsel in person and confirm his desire for representation by accident. Susan Baker Manning, who is counsel for other non-enemy combatant detainees, was in Guantanamo to meet with her clients. (*See* Decl. of Susan Baker Manning, *attached as* Ex. A to Pet.'s Mem. in Opp'n to Mot. for an Order to Show Cause, *Muhammed v. Bush*, No. 05-2087, Dec. 2, 2005, Dkt. No. 14). During a break between meetings with her clients, Boucetta approached Ms. Baker Manning and asked her for help finding a lawyer. (*See id.*, ¶¶ 3-9.) Upon learning that Boucetta had personally requested counsel, Judge Oberdorfer dismissed Kiyemba as 'next friend' and converted the case into a direct petition. *See Muhammed*, No. 05-2087 (Dec. 16, 2005).

     Ms. Baker Manning was able to speak directly with Boucetta because he speaks passable English and because he is an NEC being held in Camp Iguana, a fortuity virtually guaranteed not to repeat itself. In August of 2005, Respondents began housing non-enemy combatants detainees in a separate detention facility called "Camp Iguana." (*See* Brigadier General Jay W. Hood Decl. ¶ 5, *attached as* Ex. 1 to Resp'ts' Mem., *Qassim v. Bush*, 05-497, Dkt. No. 27, Aug. 8, 2005.) Camp Iguana is a "communal living facility." (*Id.*) NEC detainees housed in Camp Iguana have significantly greater freedom of movement than detainees held as enemy combatants. They have a common bunk room, a recreation room and a recreation yard. (*Id.* ¶¶ 5-6.) There is a fence around the facility and guards posted, but detainees in Camp Iguana are otherwise free to move about the grounds within the confines of the Camp. (*Id.*) At the time, counsel meetings with NEC detainees took place in Camp Iguana, which meant that Boucetta was able to walk up to Ms. Baker Manning and personally ask her for help getting a lawyer, something detainees in other parts of Guantanamo could never do. All counsel meetings, including NEC counsel meetings, now take place in Camp Echo, a solitary confinement facility.

II.   *Jurisdiction*

Respondents' contention that Section 1005(e)(1) of the Detainee Treatment Act of 2005 (the "DTA") divests federal courts of jurisdiction to hear any *habeas* petition filed by a Guantanamo detainee has been rendered moot by the Supreme Court's decision in *Hamdan v. Rumsfeld*, 126 S. Ct. 2749, 2769 n.15 (2006). Although Respondents concede this point, they now argue that jurisdiction over Petitioners' *habeas* petition is nonetheless barred by the exclusive review provisions of the DTA. (*See* Opp'n at 4-5.)[5]

The Court need not reach the question of whether a *habeas* petition challenging the very legitimacy of the CSRTs and Petitioners' continued detention – questions far beyond the narrow confines of Section 1005(e)(2) – would nevertheless be bundled into the Circuit's exclusive jurisdiction when paired with a challenge to a final decision of a CSRT. *See Hamdan*, 126 S. Ct. at 2769 (finding "nothing absurd about a scheme" that creates two separate systems of review for challenges to detainees' confinement); *id.* at 2815 (Scalia, J., dissenting) (criticizing majority for creating a "dual-review mechanism" for *habeas* petitions pending on the date of the DTA's enactment).

Even prior to the Supreme Court's decision in *Hamdan*, the question of when, and under what circumstances the existing Protective Order permits Petitioners to meet with their lawyers simply had no bearing on the question of which Court has jurisdiction to review the merits of Petitioner's challenge to his detention. *See Nasrullah v. Bush*, 05-891 (D.D.C. June 12, 2006) (RBW) (rejecting government's argument that the Detainee Treatment Act divested District Court

---

[5]The DTA vests "the District of Columbia Circuit Court of Appeals with exclusive authority to review the validity of any final decision of a Combatant Status Review Tribunal [CSRT] that an alien is properly detained as an enemy combatant." § 1005(e)(2).

of its authority to appoint counsel to represent Guantanamo Bay detainees); *Al Salami v. Bush*, 05-2452 (D.D.C. April 13, 2006) (PLF) ("[d]etainees' right to meet with counsel under the Protective Order is independent of the (still-unresolved) question of the Court's jurisdiction to rule on their *habeas* petitions").

"[A] protective order, like any ongoing injunction, is always subject to the inherent power of the district court." *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993); *see also Armstrong v. Executive Office of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (recognizing courts' "inherent power to enforce compliance with their lawful orders"); *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006) (same); *cf. Gambale v. Deutsche Bank, AG*, 377 F.3d 133, 140-41 (2d Cir. 2004) (recognizing court's jurisdiction to modify protective orders that remain in effect, even after dismissal of the underlying litigation). The Protective Order remains in effect in all of the Guantanamo *habeas* cases in which it was entered. Counsel for other detainees continue to visit their clients according to its terms. Indeed, under no circumstances would DoD permit counsel to visit detainees in Guantanamo Bay without counsel's signed agreement to abide by the Protective Order. The acknowledgments signed by *habeas* counsel agreeing to abide by the terms of the Protective Order remain in effect and counsel remains subject to this District Court's contempt power.

Moreover, it is well-settled law that "a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002). Petitioners are entitled to meet with their counsel in order to litigate that very question.[6] It is also well-settled that until

---

[6]On September 28, 2006, Congress again passed legislation attempting to strip federal courts of jurisdiction to consider petitions for writs of *habeas corpus* filed by any alien designated as an enemy combatant, regardless of whether they are held inside or outside the

such time as jurisdiction is determined not to exist, the District Court has the authority to issue such orders as necessary to preserve its own jurisdiction and to maintain the status quo. *See United States v. United Mine Workers of America*, 330 U.S. 258, 290-93 (1947). For example, it is unknown whether Respondents are presently seeking to transfer Petitioner to the control or custody of another government, thereby divesting this Court of jurisdiction. Granting Petitioners access to counsel guards against inadvertent or inappropriate loss of the Court's jurisdiction by ensuring that counsel is available to raise these and other similar issues with the Court.

Therefore, it is this _6th_ day of October, 2006, hereby

ORDERED that Respondents shall comply with the Protective Order and allow counsel to

---

territorial United States. *See* Military Commissions Act of 2006, S. 3930, 109th Cong., 2d Sess. § 7 (2006). As of the date of this Order, the legislation has not been signed by the President. Once the bill becomes law, its constitutionality will undoubtedly be the subject of intense litigation. *See* Charles Babington & Jonathan Weisman, *Senate Approves Detainee Bill Backed by Bush: Constitutional Challenges Predicted*, Washington Post, September 29, 2006, at A1 (quoting Senator Arlen Specter describing the habeas provisions as "'patently unconstitutional on [their] face'" but explaining his support for the bill because "'the court will clean it up' by striking the habeas provisions"). The outcome of any challenge to the constitutionality of the legislation is by no means clear. The Supreme Court has assiduously avoided reaching Suspension Clause questions, but has also repeatedly rejected Congressional attempts to repeal habeas jurisdiction under the canon of constitutional avoidance. In *INS v. St. Cyr*, 533 U.S. 289 (2001), the Supreme Court was faced with a challenge to jurisdiction stripping provisions in the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). Despite the fact that the relevant section was entitled "Elimination of Custody Review by Habeas Corpus," *id.* at 308, the Court construed the statutes as not repealing habeas jurisdiction in part to avoid the "serious Suspension Clause issues [that] would [otherwise] be presented[,]" *id.* at 305. The Supreme Court explained that "at the absolute minimum, the Suspension Clause protects the writ as it existed in 1789." *Id.* at 301 (internal citations omitted). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Id.* Again in *Hamdan*, the Supreme Court declined to decide the Suspension Clause question, citing to the same concerns it had previously expressed in *St. Cyr*. *See Hamdan*, 126 S.Ct. at 2769 n.15. Thus, any challenge to the constitutionality of Congress' most recent attempt to repeal *habeas* jurisdiction in these cases will undoubtedly find its way to the Supreme Court yet again.

meet with the Petitioners as soon as possible.

    SO ORDERED.

_____/s/_____
ALAN KAY
UNITED STATES MAGISTRATE JUDGE