IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDULLAH THANI FARIS AL-ANAZI, *et al.,* | ) ) ) ) |
| Petitioners, | ) ) |
| v. | ) ) Civil Action No. 05-CV-0345 (JDB)(AK) |
| GEORGE W. BUSH, President of the United States, *et al.,* | ) ) ) ) |
| Respondents. | ) ) ) |
| FAWZI AL ODAH, *et al.,* | ) ) |
| Petitioners, | ) ) |
| v. | ) ) Civil Action No. 02-CV-828 (CKK)(AK) |
| GEORGE W. BUSH, President of the United States, *et al.,* | ) ) ) ) |
| Respondents. | ) ) ) |
| SUHAIL ABDU ANAM, *et al.,* | ) ) |
| Petitioners, | ) ) |
| v. | ) Civil Action No. 04-CV-1194 (HHK)(AK) |
| GEORGE W. BUSH, President of the United States, *et al.,* | ) ) ) |
| Respondents. | ) ) ) |

|  |  |  |
|---|---|---|
| ABDUL HADI OMER HAMOUD FARAJ, *et al.*, | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Civil Action No. 05-CV-1490 (PLF)(AK) |
| GEORGE W. BUSH, President of the United States, *et al.*, | ) ) ) ) | |
| Respondents. | ) ) | |

|  |  |  |
|---|---|---|
| MOHMOOD SALIM AL-MOHAMMED, *et al.*, | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Civil Action No. 05-CV-247 (HHK)(AK) |
| GEORGE W. BUSH, President of the United States, *et al.*, | ) ) ) ) | |
| Respondents. | ) ) | |

|  |  |  |
|---|---|---|
| MOHAMMED, *et al.*, | ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Civil Action No. 05-CV-2087 (RMC)(AK) |
| GEORGE W. BUSH, President of the United States, *et al.*, | ) ) ) ) | |
| Respondents. | ) ) | |

|  |  |  |
|---|---|---|
| NABIL, *et al.,* | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-CV-1504 (RMC)(AK) |
| | ) | |
| GEORGE W. BUSH, | ) | |
| President of the United States, *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

|  |  |  |
|---|---|---|
| AL HAWARY, *et al.,* | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-CV-1505 (RMC)(AK) |
| | ) | |
| GEORGE W. BUSH, | ) | |
| President of the United States, *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

|  |  |  |
|---|---|---|
| SAIB, *et al.,* | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-CV-1353 (RMC)(AK) |
| | ) | |
| GEORGE W. BUSH, | ) | |
| President of the United States, *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

|  |  |  |
|---|---|---|
| SHAFIQ, *et al.,* | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-CV-1506 (RMC)(AK) |
| | ) | |
| GEORGE W. BUSH, | ) | |
| President of the United States, *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |

|  |  |  |
|---|---|---|
| HASSAN BIN ATTASH, *et al.,* | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-CV-1592 (RCL)(AK) |
| | ) | |
| GEORGE W. BUSH, | ) | |
| President of the United States, *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |

|  |  |  |
|---|---|---|
| ABDANNOUR SAMEUR, *et al.,* | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-CV-1806 (CKK)(AK) |
| | ) | |
| GEORGE W. BUSH, | ) | |
| President of the United States, *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |

MAHMOUD ABDAH, *et al.,*                         )
                                                 )
       Petitioners,                   )
                                                 )
     v.                                )     Civil Action No. 04-CV-1254 (HHK)(AK)
                                                 )
GEORGE W. BUSH,                                  )
President of the United States, *et al.,*        )
                                                 )
       Respondents.                   )

HDULSALAM ALI ABDULRAHAM                          )
AL-HELA, *et al.,*                                )
                                                  )
       Petitioners,                    )
                                                  )
     v.                                 )     Civil Action No. 05-CV-1048 (RMU)(AK)
                                                  )
GEORGE W. BUSH,                                   )
President of the United States, *et al.,*         )
                                                  )
       Respondents.                    )

SAEEK MOHAMMED SALEH HATIM,                       )
*et al.,*                                         )
                                                  )
       Petitioners,                    )
                                                  )
     v.                                 )     Civil Action No. 05-CV-1429 (RMU)(AK)
                                                  )
GEORGE W. BUSH,                                   )
President of the United States, *et al.,*         )
                                                  )
       Respondents.                    )

**RESPONDENTS' MOTION FOR RECONSIDERATION OF MAGISTRATE JUDGE'S SEPTEMBER 25, 2006 ORDER ADDRESSING PRIVILEGE TEAM'S RESPONSIBILITIES UNDER THE PROTECTIVE ORDER**

Respondents hereby object to and seek reconsideration of the portion of Magistrate Judge Alan Kay's September 25, 2006 Memorandum Order that requires the Privilege Team to conduct a classification review of any document submitted to the Privilege Team by petitioners' counsel, regardless of the document's content, its relevance to the pending habeas litigation, or the source or manner by which it was obtained. As explained below, the Magistrate Judge's Order is clearly erroneous and contrary to law for several reasons.

First, the Detainee Treatment Act of 2005 eliminates court jurisdiction to consider habeas petitions and other claims by aliens held as enemy combatants at Guantanamo Bay and creates an exclusive review mechanism in the D.C. Circuit to address the validity of the detention of such aliens. Consequently, the Magistrate Judge, who did not address the jurisdictional question in his order, lacked legal authority to issue the relief ordered in these cases. Second, the Privilege Team is under no legal obligation to perform a classification review of every piece of information presented to it by habeas counsel. The protective order and counsel access procedures establish the precise scope of materials that are subject to classification review by the Privilege Team and nothing in the protective order, or otherwise, requires the Privilege Team to review materials falling outside the scope of the protective order. The regime established by the Magistrate Judge therefore requires the Privilege Team to conduct classification review of even the most flagrant violations of the protective order within the time limits established by the protective order. Such a regime is inconsistent with the terms of the protective order.

For these reasons, as more fully explained below, respondents move this Court to vacate

-1-

that portion of the September 25 Order requiring the Privilege Team to conduct classification

review of all materials and prohibiting the Privilege Team from refusing to conduct such review

when it believe materials have been improperly submitted in violation of the protective order.

## BACKGROUND

On November 8, 2004, Senior Judge Joyce Hens Green, in the context of the then-

pending and coordinated Guantanamo Bay detainee habeas cases, entered an Amended

Protective Order and Procedures for Counsel Access to Detainees at the United States Naval

Base in Guantanamo Bay, Cuba ("Protective Order"), followed shortly thereafter by certain

supplementary orders clarifying and detailing certain matters involving the Protective Order.

See In re Guantanamo Detainee Cases, 344 F. Supp. 2d 174 (D.D.C. Nov. 8, 2004); Order

Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended

Protective Order in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Dec. 13,

2004); Order Addressing Designation Procedures for "Protected Information" in In re

Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Nov. 10, 2004).  The Protective

Order was entered by Judge Green after the parties had engaged in lengthy negotiations, after

certain issues had been litigated, and after Judge Green considered a proposed protective order

and counsel access procedures and made her own revisions to them.[1]

The Protective Order, inter alia, establishes a regime for the protection, handling, and

control of classified and otherwise protected information in light of the unique circumstances of

these Guantanamo habeas cases, which involve individuals detained as enemy combatants in an

---

[1] The Protective Order has been entered in all of the above-captioned cases except Al
Hawary (05-CV-1505 (RMC)), and Shafiq (05-CV-1506 (RMC)).

overseas military detention facility during wartime.  The Revised Procedures for Counsel Access

to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba, ("Access Procedures"), which

are annexed to the Protective Order as Exhibit A, in turn, set certain terms, conditions, and

limitations for habeas counsel's access to properly represented detainees, including procedures

and requirements with respect to information and papers delivered by counsel to detainees, as

well as obtained by counsel from detainees, "for purposes of litigating the cases in which this

Order is issued."  See Access Procedures § I.

     The Access Procedures permit privileged counsel visits and privileged "legal mail"

between counsel and a represented petitioner, subject to various requirements and restrictions in

recognition of the unique wartime setting of these cases and detentions.  Because all

communications to and from the wartime detainees at Guantanamo such as petitioners are

normally and appropriately subject to security and intelligence screening by the military, the

special, privileged legal communications channels created under the Access Procedures are

available only for "legal mail" sent solely "for purposes of litigating the cases in which th[e]

Order is issued."  Access Procedures §§ I, II.E.  Privileged "legal mail" is, by definition, limited

to:

> Letters written between counsel and a detainee that are related to the counsel's
> representation of the detainee, as well as privileged documents and publicly filed
> legal documents relating to that representation.

Id. § II.E.  Detainees, however, are not permitted to use this privileged mail system for non-legal

mail, including communications with others besides their counsel; the Access Procedures

contemplate and require that non-legal communications be routed through the normal mail

process at Guantanamo Bay, which includes content screening for national security, intelligence,

and physical and personnel security[2] purposes.  <u>See id.</u> § IV.B.4.-5. (counsel may not use legal

mail channels as conduit for non-legal mail; non-legal mail subject to review by military); <u>see</u>

<u>also</u> <u>id.</u> § VI.C. (messages to others besides counsel must be processed as non-legal mail);

§ IV.A.5. (non-legal mail communications to detainees must be sent to detainee through normal,

non-privileged mail channels).

Also in recognition of the unique, wartime setting of these cases and detentions,

including that information possessed by detainees could have national security or physical and

personnel security implications warranting potential treatment of the information as classified

information, the Access Procedures require that communications from detainees and information

learned from them be treated as presumptively classified.  <u>See</u> Access Procedures §§ III.A.,

IV.A.6., VI.  Such information, including privileged letters and materials reflecting privileged

communications to counsel from a represented detainee, may only be handled in a secure fashion

and within the secure facility established for such purposes.  <u>See</u> Protective Order ¶ 26; <u>id.</u> ¶¶ 20-

24.  Counsel, however, may submit such materials to the DoD Privilege Team for a

"determination of its appropriate security classification."  <u>See</u> Access Procedures § VII.; <u>see</u> <u>also</u>

<u>id.</u> § IV.A.6. (counsel required to treat information learned from a detainee, "including any oral

and written communications with a detainee," as classified pending review by Privilege Team).

In the event counsel submit such material to the Privilege Team for classification review, the

Access Procedures require that the Privilege Team conduct any review within seven, fourteen, or

twenty business days, depending upon the type of information submitted.  <u>See</u> Access

---

[2] This would include information concerning the Guantanamo Bay facility and its
personnel.

-4-

Procedures § VII.C.

As set forth in the Access Procedures, the Privilege Team is "[a] team comprised of one or more DoD attorneys and one or more intelligence or law enforcement personnel who have not taken part in, and, in the future, will not take part in, any domestic or foreign court, military commission or combatant status tribunal proceedings involving the detainee."[3]  Id. § II.D. Absent Court authorization or the consent of counsel submitting the information to the Privilege Team, the Privilege Team cannot disclose to anyone information learned from their review activities, except that the Privilege Team may disclose information indicating an "immediate and substantial harm to national security" or "imminent acts of violence" to officials with a role in responding to such potential harms or violence.   See id. § VII. A., D.-F.  Materials properly marked by the Privilege Team as classified may only be handled in a secure fashion and within the secure facility; of course, materials determined to be unclassified are not subject to such treatment.  See Protective Order ¶ 26; id. ¶¶ 20-24.

On February 21, 2006, petitioners in twelve of the above-captioned cases filed a motion to motion to compel Privilege Team compliance with the Protective Order.  Petitioners in three additional cases – Abdah, Al-Hela, Hatim – joined the motion by filing a single-page case caption on February 22, 2006.  Thereafter, on March 2, 2006, United States Magistrate Judge Alan Kay issued an order appointing a Special Litigation Team to represent the Privilege Team in its response to petitioners' motion to compel, pursuant to the terms of Judge Kay's February 2, 2006 Order, authorizing a Special Litigation Team in Salahi v Bush, 05-CV-569 (JR) (dkt. no.

---

[3] The Team may also include translators meeting the same qualification.  See Access Procedures § II.D.

49).  Although a Special Litigation Team was appointed to represent the interests of the Privilege

Team, respondents submitted an opposition based on their own interest in the proper

administration of the Protective Order and Access Procedures.  See Respondents' Opposition To

Petitioners' Motion To Compel Privilege Team Compliance With The Amended Protective

Order (Mar. 8, 2006).

      On September 25, 2006, Magistrate Judge Kay issued an Order construing the Privilege

Team's duties and responsibilities under the Protective Order.  See Order Addressing Privilege

Review Team's Responsibilities Under The Protective Order (attached as Exhibit A).  The Order

addresses the two issues raised by petitioners' motion to compel: "1) Whether the [Privilege

Team] may refuse to perform classification review of documents or information submitted to it

by habeas counsel pursuant to the Protective Order, and 2) whether the [Privilege Team] has the

authority to presumptively designate information as "Protected."  Id. at 1.  With respect to the

first issue,[4] the Magistrate Judge concluded that "[n]othing in the Protective Order authorizes the

[Privilege Team] to decline to conduct a classification review under any circumstances."  Id. at

5.  Further, the Magistrate Judge ruled that the Privilege Team must review all information

submitted to it in accordance with the "defined time-frames" of the Access Procedures and "may

not simply refuse to conduct a classification review of documents submitted to it by habeas

counsel" even when it believes that habeas counsel "may have violated the terms of the

Protective Order."  Id. at 4-5.  The Magistrate Judge also concluded that the Protective Order

places responsibility on petitioners' counsel in the first instance to determine whether

---

    [4] Respondents do not seek reconsideration or relief with respect to the portion of
Magistrate Judge's Order addressing the "protected information" issue.

communications and information are appropriate for submission to the Privilege Team,
consistent with the terms of the Protective Order and Access Procedures. See id. at 4. In the
event the Privilege Team believes petitioners' counsel have submitted materials for classification
review in violation of the Protective Order, the Magistrate Judge determined that the exclusive
remedy is for the Privilege Team to report the violation to the Court without delay. See id.
However, the Magistrate Judge ruled that Privilege Team "may not engage in self-help in
policing what it believes to be the proper interpretation of the Protective Order" by declining to
review materials. Id. at 5.

Respondents now timely move for reconsideration of the portion of the Magistrate
Judge's September 25, 2006 Order that requires the Privilege Team to conduct a classification
review of all documents submitted by petitioners' counsel. See Fed. R. Civ. P. 6(e), 72(a);
LCvR 72.2(b).

## ARGUMENT

I.    **The Magistrate Judge's Order Is Contrary To Law Because The Court
      Lacks Jurisdiction To Order Relief.**

On December 30, 2006, the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X,
119 Stat. 2680 ("the Act"), became law. The Act, among other things, amends 28 U.S.C. § 2241
to eliminate court jurisdiction to consider habeas petitions and other claims by aliens held as
enemy combatants at Guantanamo Bay, id. § 1005(e)(1), and to create an exclusive review
mechanism in the D.C. Circuit to address the validity of the detention of such aliens and final
decisions of any military commissions, id. § 1005(e)(1), (e)(2), (e)(3). Section 1005(e)(2) of the
Act states that the D.C. Circuit "shall have exclusive jurisdiction to determine the validity of any
final decision of a Combatant Status Review Tribunal that an alien is properly detained as an

enemy combatant," and it further specifies the scope and intensiveness of that review.  While the Supreme Court in <u>Hamdan</u> held that § 1005(e)(1) did not apply to habeas petitions pending prior to the enactment of the Act, it reserved the question of whether the exclusive review provisions of the Act did apply to cases pending prior to enactment.  <u>See</u> <u>Hamdan v. Rumsfeld</u>, 548 U.S. ---, 126 S. Ct. 2749, 2762-69 (U.S. June 29, 2006).  While the petitioner in <u>Hamdan</u> escaped the Act by virtue of the fact that his challenge did not involve a final decision of a military commission within the exclusive jurisdiction of the Court of Appeals under § 1005(e)(3), the Court stated that "[t]here may be habeas cases that were pending in the lower courts at the time the DTA was enacted that do qualify as challenges to 'final decision[s]' within the meaning of subsection (e)(2) or (e)(3) [the exclusive review in CTA sections].  We express no view about whether the DTA would require transfer of such an action to the District of Columbia Circuit."  <u>Hamdan</u>, 126 S. Ct. at 2769 n.14.  The above-captioned cases are just such cases, <u>i.e.</u>, challenges to petitioners' designation as an enemy combatant through a Combatant Status Review Tribunal, and given the Act's investment of exclusive review in the Court of Appeals, the District Court lacks jurisdiction over the cases.  <u>See</u> <u>Telecommunications Research and Action Center v. FCC</u>, 750 F.2d 70, 75, 78-79 (D.C. Cir. 1984) (request for relief in district court that might affect Court of Appeals' future, exclusive jurisdiction is subject to the exclusive review of the Court of Appeals); <u>cf.</u> <u>id.</u> at 77 ("By lodging review of agency action in the Court of Appeals, Congress manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power.").

The Magistrate Judge's September 25 Order did not address the significant jurisdictional questions raised by the Act, even though jurisdictional objections were raised in Respondents'

Opposition To Petitioners' Motion To Compel Privilege Team Compliance With The Amended

Protective Order (Mar. 8, 2006), at 6-9.  See Floyd v. District of Columbia, 129 F.3d 152, 155

(D.C. Cir. 1997) (noting that "jurisdiction cannot be waived").  In light of the Act's investment

of exclusive jurisdiction in the Court of Appeals, respondents' jurisdictional argument warrants

appropriate consideration and it is in no way immaterial or premature.  More specifically, to the

extent the Magistrate Judge's September 25 Order purports to impose prospective, ongoing

requirements and constraints on the Privilege Team, the fact that jurisdiction is absent makes the

imposition of those requirements and constraints improper.  See Steel Co. v. Citizens for a Better

Env't, 523 U.S. 83, 94 (1998) ("Without jurisdiction [a] court cannot proceed at all in any

cause."); see also Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869) ("Jurisdiction is power

to declare the law, and when it ceases to exist, the only function remaining to the court is that of

announcing the fact and dismissing the cause.").

     In any event, the effect of the Hamdan decision on this Court's jurisdiction is pending

before the Court of Appeals and supplemental briefing was completed in August 2006.  Because

the effect of the Act on cases such as these remains pending before the Court of Appeals, at a

minimum the Magistrate Judge should have stayed consideration of petitioners' motion pending

the resolution of the effect of the Act.  The Magistrate Judge's decision to order relief in the face

of the serious jurisdictional questions presented by the Act,[5] without any analysis or discussion

---

     [5] Moreover, Congress recently passed the Military Commissions Act of 2006, which, among other things, amends 28 U.S.C. § 2241 to eliminate district court jurisdiction to consider habeas and other claims by aliens detained by the United States as enemy combatants.  See Military Commissions Act of 2006, S. 3930, 109th Cong. § 7 (2006).  The legislation, which awaits signature by the President, expressly applies the amendment "to all cases, without exception, pending on or after the date of the enactment of this Act," which would include the above-captioned cases and thereby divest this Court of jurisdiction over this action.

of the Act, was clearly erroneous and contrary to law.

**II.    The Magistrate Judge's Order Is Clearly Erroneous And Contrary To Law Because The Protective Order Does Not Require The Privilege Team To Perform <u>Classification Review Of Information Outside The Scope Of The Protective Order.</u>**

Aside from lacking jurisdiction to order relief, the Magistrate Judge acted in a clearly erroneous fashion in ruling that the Privilege Team must perform a classification review of all information submitted to it, regardless of the information's content, its relevance to the pending habeas litigation, or the source or manner by which it was obtained.  Nothing in the Protective Order or Access Procedures supports such an overreaching requirement.  Accordingly, this portion of the Magistrate Judge's Order should be vacated.[6]

As explained above, consistent with the unique circumstances of these cases, which involve aliens detained during wartime in an overseas military detention facility, the Protective Order and Access Procedures establishes the scope of information that is subject to classification review by the Privilege Team.  First, the Access Procedures provide a regime intended to permit privileged communications between counsel and detainees, but only "for purposes of litigating the cases in which the Order is issued."  <u>See</u> Access Procedures § I.  Thus, Privilege Team review is a mechanism merely to determine the classification status of appropriately privileged communications to counsel from a detainee and relieve counsel from the constraints of treating

_____

[6] Respondents' specifically request that the Court vacate the following portion of the Magistrate Judge's Order:

FURTHER ORDERED that the PRT [Privilege Team] shall conduct a classification review of materials submitted to it by habeas counsel, as provided by the terms of the Protective Order and shall not refuse to conduct classification review when it believes materials to have been improperly submitted

<u>See</u> September 25, 2006 Order at 7.

-10-

the communications as classified where appropriate. It is not an omnibus classification review facility for just any communication to counsel from a detainee. Any consideration of the function of the Privilege Team in providing privileged review of communications from detainees to counsel must be considered in the unique context of the cases, where all communications from and to these wartime detainees are normally subject to security and intelligence screening by the military. Thus, the special, privileged legal communications channels created under the Protective Order and Access Procedures, for which Privilege Team review was created and operates, are available only for "legal mail" undertaken only "for purposes of litigating the cases in which th[e] Order is issued." Access Procedures §§ I, II.E.

This fact is supported by provisions prohibiting detainees from using the privileged mail system for non-legal mail, including communications with others besides their counsel. The Access Procedures contemplate and require that non-legal communications be routed through the normal mail process at Guantanamo Bay, which includes content screening for national security, intelligence, and physical and personnel security purposes. See id. § IV.B.4.-5 (counsel may not use legal mail channels as conduit for non-legal mail; non-legal mail subject to review by military); see also id. § VI.C. (messages to others besides counsel to be processed as non-legal mail); § IV.A.5. (non-legal mail communications to detainees to be sent to detainee through normal, non-privileged mail channels). Indeed, the Access Procedures state that any non-legal information received by counsel through the privileged communications channels must be returned to military personnel at Guantanamo for processing in accordance with standard operating procedures for detainee non-legal mail. See id. §§ IV.B.5, VI.C. Thus, it would be an abuse by counsel and petitioners of the privileged legal mail channels created "for purposes of

-11-

litigating the [habeas] cases" to permit petitioners to use those channels and the corresponding

Privilege Team classification review process to engage in communications outside the defined

scope of the Protective Order.

The Privilege Team, therefore, can only be obligated to perform classification review of

materials falling within the scope of the Access Procedures.  The Magistrate Judge's September

25 Order ignores the well-defined scope of the Access Procedures and, instead, creates a regime

in which the Privilege Team is required to review every piece of information submitted to it by

habeas counsel.  Nothing in the Access Procedures compels such sweeping review.

Indeed, the impropriety of the regime created by the Magistrate Judge's Order is reflected

in the motion of petitioners, which the Magistrate Judge granted.  Although petitioners did not

ask for relief with respect to specific documents submitted for review by the Privilege Team,

they provided several examples of documents that the Privilege Team refused to review in order

to illustrate alleged misconduct by the Privilege Team.  See Petitioners' Motion to Compel at

12-13.  Counsel complained that the Privilege Team refused to review certain letters submitted

prior to November 2005 that "tell the world" about alleged torture a detainee has suffered, id. at

12, but the accompanying memorandum from the Privilege Team established that the detainee

wrote the letter to counsel with the instruction that counsel pass along the information to the

detainee's family, among others.  See Petitioners' Motion to Compel, Declaration of Marc

Falkoff, Exhibit C.  Thus, the detainee was improperly attempting to use counsel as a conduit for

non-legal communications to persons other than counsel.  Petitioners also argued that in

September 2005 the Privilege Team initially refused to review official medical charts from

Guantanamo pertaining to the weight loss of a particular detainee on the basis that the documents

-12-

may have been improperly procured by petitioners' counsel. <u>See</u> Petitioners' Motion to Compel,

Declaration of Kristine Huskey ¶¶ 4-6. Thus, the Privilege Team was reacting to what appeared

to be documents improperly taken or stolen from Guantanamo, particularly given the stay of

proceedings in these cases and the absence of ongoing discovery. (The material was later

submitted by counsel as part of a court filing and was determined by respondents to have been

properly acquired, and the matter was ultimately resolved without Court intervention.) Counsel

also contended that the Privilege Team improperly refused to review a "Last Will and

Testament" written by a detainee in October 2005. <u>See</u> Petitioners' Motion to Compel,

Declaration of Kristine Huskey ¶¶ 8-10. Such a document, however, was in no way conveyed

"for the purposes of litigating" the detainee's habeas corpus case, as required by the Access

Procedures. While a will is unquestionably a legal document, the Access Procedures were not

created to provide detainees with means to conduct, in a privileged fashion, probate matters or

other legal affairs they may have an interest in addressing during the course of their detention.

Under the Magistrate Judge's Order, the Privilege Team, however, would have had to review

each of these documents submitted by counsel. Such a regime is inconsistent with the terms and

purposes of the Access Procedures regime and is wholly inappropriate in the unique context of

the detention of wartime detainees.

The Magistrate Judge's Order ignores the provisions and purpose of the Access

Procedures and requires the Privilege Team to conduct a classification review of every document

submitted by habeas counsel. The Order thus incorrectly blurs the well-established distinction

between legal and non-legal mail. Indeed, detainees now have little incentive to send non-legal

communications through non-legal channels given the knowledge that any document, whether

non-legal or legal, presented to the Privilege Team must be reviewed within designated time

lines and, if determined to be unclassified, could be distributed by counsel, publicly or otherwise.

Under the Magistrate Judge's regime, the Privilege Team is now compelled to review materials

that involve even the most flagrant violations of the Protective Order.  According to the

Magistrate Judge, however, the only remedy available to the Privilege Team in such a situation

is to report the violation to the Court, but that proposed course of action would not stay the

Privilege Team's obligation to perform classification review within the time periods established

by the Access Procedures.  See Access Procedures § VII.C.  The Privilege Team therefore would

have to seek from the Court an emergency stay of its review obligations or an emergency

restraining order against petitioners' counsel to prevent a disclosure of material determined to be

unclassified or unprotected during the Privilege Team review in order to prevent potential

disclosure of material submitted in violation of the Access Procedures – a potentially

burdensome task given the significant volume of information the Privilege Team reviews on a

regular basis.

Further, the Magistrate Judge's Order concludes that the Protective Order "clearly places

the responsibility on habeas counsel to determine in the first instance whether communications

from a detainee should be submitted to the [Privilege Team,]" see September 25 Order at 4, but it

does not necessarily follow that the Privilege Team is powerless to refuse to review materials

falling outside the scope of the Access Procedures.  By reaching this conclusion, however, the

Magistrate Judge's Order improperly construes the Access Procedures to provide that habeas

counsel are the arbiter of whether a document is appropriate for classification review by the

Privilege Team.  Nothing in the Access Procedures vests habeas counsel with such authority and

-14-

the Magistrate Judge's citations to those provisions of the Access Procedures requiring habeas counsel to return certain non-legal materials to Guantanamo, see id., cannot reasonably be construed as a limitation on the Privilege Team's authority to decline to review materials falling outside the scope of the Access Procedures.

## **CONCLUSION**

For the reasons stated above, the Court should vacate that portion of the Magistrate Judge's September 25, 2006 Order requiring the Privilege Team to conduct classification review of all materials and prohibiting the Privilege Team from refusing to conduct such review when it believes materials have been improperly submitted in violation of the protective order.

Dated: October 13, 2006                    Respectfully submitted,

                                           PETER D. KEISLER
                                           Assistant Attorney General

                                           DOUGLAS N. LETTER
                                           Terrorism Litigation Counsel

                                              /s/ DRAFT
                                           JOSEPH H. HUNT (D.C. Bar No. 431134)
                                           VINCENT M. GARVEY (D.C. Bar No. 127191)
                                           TERRY M. HENRY
                                           JAMES J. SCHWARTZ
                                           PREEYA M. NORONHA
                                           ROBERT J. KATERBERG
                                           ANDREW I. WARDEN (IN Bar No. 23840-49)
                                           NICHOLAS J. PATTERSON
                                           EDWARD H. WHITE
                                           United States Department of Justice
                                           Civil Division, Federal Programs Branch
                                           20 Massachusetts Ave., N.W.
                                           Washington, DC  20530
                                           Tel:  (202) 514-4107
                                           Fax:  (202) 616-8470

-15-

Attorneys for Respondents