APPROVED FOR PUBLIC FILING BY CSO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOTAI SAIB, *et al.*, ) | |
| ) | |
| Petitioners/Plaintiffs, ) | |
| ) | |
| v. ) | Civil No. 05-CV-1353 (RMC) |
| ) | |
| GEORGE W. BUSH, *et al.*, ) | |
| ) | |
| Respondents/Defendants. ) | |
| _____) | |

**PETITIONER'S OPPOSITION TO MOTION TO DISMISS,
NOTICE OF INTENT TO FILE DTA PETITION, AND
MOTION FOR A STAY-AND-ABEY ORDER OR,
ALTERNATIVELY, A TRANSFER ORDER UNDER 28 U.S.C. § 1631**

Petitioner Saib, through his attorneys, opposes Respondents' Motion to Dismiss this action. Petitioner Saib respectfully requests that the Court enter an Order staying this case while litigation concerning the Detainee Treatment Act of 2005 proceeds in the appellate courts, and holding a disposition of the merits in abeyance pending the outcome of that litigation. Counsel for Petitioner has conferred with Counsel for Respondents regarding Petitioner's request for a Stay-and-Abey Order, and Respondents oppose the motion.

## I. INTRODUCTION

At the time Petitioner filed his petition for habeas corpus, this Court had jurisdiction to review the grounds for detention, as the Supreme Court held in *Rasul v. Bush*, 542 U.S. 466 (2004). Since that time, the Respondents have claimed that intervening statutes deprived the District Courts of jurisdiction, a position that Petitioner and similarly-situated petitioning Guantanamo detainees contest based on an array of factual and legal arguments.

Due to suggestions by the Supreme Court in the recent denial of certiorari in *Boumediene v. Bush*, Petitioner intends to file a Petition authorized by the Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat. 2680 ("DTA"), with the United States Court of Appeals for the District of Columbia Circuit. Petitioner intends to file his DTA Petition in the Court of Appeals to exhaust remedies available under the DTA, while still maintaining his contention that the DTA does not provide an adequate substitute for habeas corpus proceedings. *See generally Boumediene v. Bush*, Nos. 06-1195 & 06-1196, 2007 WL 957363, at *1 (U.S. Apr. 2, 2007) ("*Boumediene II*") (statement of Stevens, J., joined by Kennedy, J., respecting denial of certiorari, and suggesting exhaustion of DTA remedies as a prerequisite for further potential Supreme Court review).

In the interests of justice, Petitioner requests that this Court deny Respondents' Motion to Dismiss and, instead, enter an order staying this case while litigation concerning the DTA – including the adequacy of remedies and related jurisdictional questions – proceeds in the appellate courts, and holding a disposition of the merits in abeyance pending the outcome of that litigation. *See Rhines v. Weber*, 544 U.S. 269, 274 (2005). In the alternative, if this Court now determines that it lacks jurisdiction over the petition (which Petitioner respectfully suggests would be premature), then it should transfer the habeas action to the Court of Appeals pursuant to 28 U.S.C. § 1631, for consolidation with Petitioner's DTA action.

## II. ARGUMENT

### A. This Court Retains Subject-Matter Jurisdiction over the Habeas Corpus Petition as Long as the Petitioner's Claims Are Not Frivolous and Have Not Been Decided on the Merits by the Supreme Court.

Respondents place primary reliance on *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998) for the unremarkable proposition that jurisdiction is a threshold question

(Motion at 4). Respondents ignore the preceding language in *Steel Co.*, language that supports this Court's jurisdiction to maintain the habeas action as long as a legitimate controversy exists that has not been resolved on the merits by the Supreme Court. *Steel Co.*, 523 U.S. at 89.

The starting point of *Steel Co.* is that a District Court has subject matter jurisdiction as long as there is a non-frivolous argument that the laws and Constitution support the claim:

> [T]he district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another.' . . . unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'

523 U.S. at 89 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83, 685 (1946)). As demonstrated by the dissenting opinions in the Court of Appeals and on the denial of certiorari in *Boumediene*, there is a reading of the Constitution and laws of the United States that would sustain the instant habeas corpus petition. 476 F.3d at 994-1012 (Rogers, J., dissenting); 127 S. Ct. at 1479-81 (Breyer, Souter & Ginsburg, JJ., dissenting from denial of certiorari).

The *Steel Co.* opinion also establishes that a Court of Appeals opinion, such as *Boumediene*, is not sufficient to deprive the Court of subject-matter jurisdiction. Only when the Supreme Court rules adversely on the merits is dismissal for want of subject matter jurisdiction appropriate: "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, *foreclosed by prior decisions of this Court*, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co.*, 523 U.S. at 89 (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)) (emphasis added). The *Boumediene* denial of certiorari is emphatically not a ruling on the merits.

3

The jurisdictional issues are obviously not frivolous because the courts have been split on the constitutional issues at each level of the litigation: the District Courts split, leading to the two-to-one *Boumediene* opinion, resulting in the three-way fracture in the *Boumediene* denial of certiorari. Seldom has this country faced weightier issues about the meaning of our Constitution. The primary case upon which Respondents rely establishes that the motion to dismiss should be denied while remedies are exhausted.

Ironically, Respondents' own Motion recognizes this Court's continuing jurisdiction while the merits are exhausted, litigated, and appealed. In footnote 15, Respondent points out that the Protective Order should survive dismissal, citing to a case upon which the petitioner relies – *United Mine Workers* (Motion at 8-9 n.15). But *United Mine Workers* establishes that the District Court has the authority throughout the litigation to maintain the status quo by enforcing the protective order and otherwise ensuring that "the office and purposes of the writ of habeas corpus are not compromised," as Justices Stevens and Kennedy put it in *Boumediene*.[1]

This Court retains the power to decide its own jurisdiction in the first instance. *Kircher v. Putnam Funds Trust*, 126 S.Ct. 2145, 2155; *United States v. Ruiz*, 536 U.S. 622, 628 (2002). While the efficacy of the DTA remedies are determined, it is premature for this Court to determine the dispositive questions. Meanwhile, this Court should follow the stay-and-abey norm established in *Rhines*; then, if the case is not mooted by the DTA proceedings, it should provide the petitioner the opportunity to make his record, to present his claims, and to receive a decision based on the facts and law of his individual case.

---

[1] Respondents' position regarding selective survival of the protective order's provisions is untenable. If this Court were to dismiss, the protective order would continue in full effect until the protective order itself, or individual provisions, were dissolved by separate order of this Court.

Respondents' position is based on a fundamental misunderstanding of what it means for a court to have jurisdiction. "Jurisdiction is a word of many, too many, meanings." *Steel Co.*, 523 U.S. at 90 (quoting *United States v. Vanness*, 85 F.3d 661, 663 n. 2 (D.C. Cir. 1996)). While the *Boumediene* opinion states the current law of the Circuit, the ruling does nothing to impair Petitioner's rights to exhaust his remedies while this Court preserves the status quo.[2] If necessary, after exhaustion, this Court, the Circuit Court, and the Supreme Court have jurisdiction to determine the substantial issues raised by the petitioner without prejudgment based on a Circuit Court ruling that does not address Petitioner's specific factual and legal claims.

B.  **The *Boumediene* Case Establishes That the Present Case Involves Substantial Issues That Have Not Been Decided by the Supreme Court and That the Exhaustion of Available Remedies Should Precede a Decision on the Merits.**

Respondents attempt to stretch the Circuit Court's *Boumediene* decision far beyond its reach. Despite the initial jurisdiction found in *Rasul*, a split panel of this Court found that post-*Rasul* statutes deprived the courts of jurisdiction over petitions involving aliens detained at Guantánamo. *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007). Only because the petitioners in those cases had declined to seek review directly with the Court of Appeals under § 1005(e) of the Detainee Treatment Act of 2005, the Court found that the "only recourse" was to vacate the

---

[2] Respondents erroneously cite to *Ayuda v. Thornburg*, 919 F.2d 153 (D.C. Cir. 1990), for the proposition that a Court of Appeals opinion immediately becomes the law of the circuit, depriving the courts of the power to stay and hold in abeyance. In fact, the majority ruled in *Ayuda* that a stay was appropriate. Respondents cited a concurring opinion only, and, in that opinion, the concurring Judge ultimately agreed with the majority, which rejected the proposition that the court lacked power to enter a stay. *See Ayuda*, 919 F.2d at 153. The other concurring and dissenting opinion correctly articulated the applicable law that, until the Supreme Court speaks on jurisdiction, the District Court has the power to determine its own jurisdiction including "minimally, the power to maintain the status quo." *Ayuda*, 919 F.3d at 155-56 (Wald, C.J., concurring and dissenting).

5

District Court decision and dismiss the case for lack of jurisdiction. *Boumediene*, 476 F.3d at 994.  The petitioners filed for a writ of certiorari and, on April 2, 2007, the Supreme Court denied certiorari, with both a three-Justice dissent and a two-Justice statement respecting the denial of certiorari.  *Boumediene v. Bush*, 127 S. Ct. 1478 (2007).

The statement of Justices Stevens and Kennedy found that, given "our practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus," denial of certiorari was appropriate "at this time." 127 S Ct. at 1479. The Justices specifically expressed concern regarding maintenance of the status quo during the litigation: "Were the government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'"  *Id.* (quoting *Padilla v. Hanft*, 547 U.S. 1062 (Kennedy, J., concurring in the denial of certiorari)).

Respondents' reliance on *Boumediene* is misplaced for several reasons.  First, the Circuit Court's reference to the *Boumediene* petitioners' decision not to exhaust, coupled with Justices Stevens and Kennedy's explicit adoption of the exhaustion model based on *Ex parte Hawk*, 321 U.S. 114 (1944), support continuing the stay while the DTA remedy is exhausted.  Second, the jurisdictional questions have not been finally resolved because "as always, denial of certiorari does not constitute an expression of any opinion on the merits." *Boumediene*, 127 S.Ct. at 1479 (Stevens & Kennedy, JJ., statement regarding denial of certiorari) (citing *Rasul*, 542 U.S. at 480-81). Third, Justices Stevens and Kennedy's citation to Supreme Court authority regarding the efficacy of the alternative remedies contemplates an underlying habeas corpus case in which the

6

petitioner can present such arguments to the District Court and, if necessary, the Circuit Court and Supreme Court.

   *1. Justices Stevens and Kennedy Explicitly (and the Circuit Court Implicitly) Adopted the Exhaustion of Remedies Model for Habeas Relief*

*Boumediene* does not control this case because, unlike the petitioners in that case, Petitioner here intends to exhaust his remedies under the DTA. The Circuit Court opinion expressly predicated its dismissal order on the petitioners' failure to utilize available remedies under the DTA. *Boumediene*, 476 F.3d at 994. Justices Stevens and Kennedy explained that "[d]espite the obvious importance of the issues," the Court was denying certiorari "at this time" in light of the Court's practice of requiring exhaustion of available remedies, citing *Ex parte Hawk*. *Boumediene*, 127 S. Ct. at 1479.

The citation to *Hawk* is telling. In that case, the petitioner filed for federal habeas corpus relief under circumstances, as in the present case, in which the effectiveness of other remedies had not been established. The Supreme Court not only applied the exhaustion rule but held that the adequacy of the available remedy should be decided in the first instance by "the federal district court":

> Where the state courts have considered and adjudicated the merits of his contentions, and this Court has either reviewed or declined to review the state court's decision, a federal court will not ordinarily reexamine upon writ of habeas corpus the questions thus adjudicated . . . . But where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised, either because the state affords no remedy . . . or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate . . . , a federal court should entertain his petition for habeas corpus, else he would be remediless. In such a case he should proceed in the federal district court before resorting to this Court by petition for habeas corpus.

321 U.S. at 118 (citations omitted). The exhaustion model anticipates that the ultimate questions regarding jurisdiction, which may depend in large part on the efficacy of the DTA remedy, will

first be considered and decided in the District Court. The ultimate issues would then be preserved for appellate and Supreme Court review, if necessary.

*2. The Supreme Court Has Not Decided Any Questions Regarding the Jurisdiction of This Court or the Rights That Can Be Enforced Through Habeas Corpus Proceedings*

Respondents' claims regarding *Boumediene* ignore the simple reality that "as always, denial of certiorari does not constitute an expression of any opinion on the merits." 127 S. Ct. at 1479. Three dissenting Justices and Circuit Judge Rogers in dissent explained that the constitutional ramifications of a statute that purports to disenfranchise petitioners in existing habeas corpus petitions are profound and of obvious importance. *Boumediene*, 476 F.3d at 994-1012; 127 S. Ct. at 1479-81.  The addition of Justices Stevens and Kennedy's statement confirms that the instant petition should be fully considered after exhaustion, and then in light of the specific claims for relief Petitioner makes upon his unique facts in the DTA proceedings, and whether those proceedings prove capable of providing the relief he claims on his facts.  The *Boumediene* case does not finally resolve the jurisdictional questions in this case.[3]

*3. The Jurisdictional Questions Regarding Habeas Corpus Cannot Be Resolved until the Adequacy of the DTA Remedy Becomes Known*

Questions regarding the suspension and elimination of the writ of habeas corpus require consideration of whether alternative remedies provide protection coextensive with the Great Writ.  *Swain v. Pressley*, 430 U.S. 372, 381 (1977) ("the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus.").  The *Boumediene* statement on certiorari clearly sets out, with citation to *Marino v. Ragen*, 332 U.S. 561 (1947), that, if the DTA remedy

---

[3] The *Boumediene* case does not even finally decide the questions for the *Boumediene* petitioners, given that the mandate has not issued and the cases are still subject to motions and briefing.

is "inadequate," the Court is prepared to address the merits of the habeas corpus claims. *Boumediene*, 127 S. Ct. at 1479 (statement of Stevens and Kennedy, JJ.). Further, the Court stated that, in the interim, Respondents should take no additional steps "to prejudice the position of petitioners" in seeking review. *Id*. By maintaining the present case in the District Court, this Court is in a position to "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised." *Id*. In sum, the exhaustion model from the *Boumediene* litigation requires that this District Court proceeding remain in place for potential post-exhaustion litigation.

### C. The Stay-and-Abey Procedure Is Appropriate.

Staying this action is consistent with Supreme Court directives in the analogous situation when a federal court is presented with unexhausted claims under 28 U.S.C. § 2254. In *Rhines v. Weber*, 544 U.S. 269 (2005), the prisoner filed in federal court a mixed habeas petition, raising some claims previously resolved in the state system together with other, unresolved claims. The Court recited its precedent in *Rose v. Lundy*, 455 U.S. 509 (1982), in which it had imposed a requirement of "total exhaustion" with respect to mixed petitions and, on that basis, had directed the federal courts to dismiss mixed petitions without prejudice, for the petitioners to present their unresolved claims in state court. *Id.* at 522. Yet the *Rhines* Court observed that, at the time of *Lundy*, there was no statute of limitations on the filing of federal habeas corpus petitions, which meant that petitioners could return to federal court following exhaustion of their state claims "with relative ease." Congress's enactment of a limitations period for federal habeas petitions after the *Lundy* decision meant that the petitioner's federal habeas claim could become procedurally barred, as the petitioner pursued unexhausted state claims following a dismissal

without prejudice by the federal court. Recognizing that problem, the *Rhines* Court allowed for district courts to apply the stay-and-abey procedure at their discretion.

As discussed above, this case and other pending habeas actions by Guantánamo detainees now pending in this Court involve a genuine prospect of further Supreme Court review to decide the federal courts' jurisdiction in the Guantánamo cases. Petitioner's right to proceed by seeking a writ of habeas corpus, to the extent the Supreme Court may decide that right exists, could be impaired if this Court were to dismiss this petition now. In this way, the situation is comparable to *Rhines*, where it was possible (yet not certain) that an otherwise valid federal habeas claim could be barred as a result of pursuing unexhausted claims in another forum. For instance, one issue before the Supreme Court in the *Boumediene* certiorari petition was whether the MCA's effective-date provision removed statutory habeas corpus jurisdiction for cases pending at the time of the MCA's enactment. If the Supreme Court later grants certiorari to review the jurisdictional holding in *Boumediene I*, one potential outcome is that the Court could determine that the MCA does not deprive the federal district courts of statutory habeas jurisdiction for cases pending as of the MCA's enactment, and thereby avoid deciding the validity of the MCA's jurisdictional provision on constitutional grounds. If this Court were to dismiss this habeas petition now, notwithstanding such a potential outcome, Respondents could later argue that Petitioner is prevented under the MCA from filing another habeas corpus petition, or is otherwise procedurally barred.[4] It was the potential for such impediments to substantive habeas review to occur that caused the *Rhines* Court to permit district courts to exercise their discretion to enter

---

[4] It is unclear to Petitioner, for instance, whether Respondents might later attempt to argue that the four- or six-year general limitations periods for federal questions claims and claims against the United States could apply to the detainees should they in the future file another habeas corpus petition, *see* 28 U.S.C. §§ 1658 & 2401; in any event, Petitioner is concerned based on the history of the Guantánamo cases to date that such technical questions may consume additional significant time and resources, rendering increasingly remote any prospect for justice.

10

stay-and-abey orders. *See also Boumediene II*, 127 S. Ct. at 1478 (statement of Stevens, J., joined by Kennedy, J., respecting denial of certiorari) ("Were the government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'") (citation omitted).

Overall, the dynamic and complex history of the Guantánamo cases – whose resolution may depend on an as yet unforeseeable convergence of decisions by the Supreme Court, the Executive Branch, the Congress, and the Court of Appeals – makes it particularly appropriate for this Court to exercise caution before taking any action that may have unanticipated jurisdictional consequences, carrying the potential to deny Petitioner a fundamental right of judicial review that he has already effectively been denied for more than six years. In short, the discretionary stay-and-abey framework is particularly appropriate in this case.

### D. The *Rhines* Factors Uniformly Support a Stay-and-Abey Order in this Case.

The *Rhines* Court further described specific conditions under which a court should apply the stay-and-abey procedure. The Supreme Court recognized that it would be an abuse of discretion for a court to dismiss a habeas petition if the "petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that [the petitioner] engaged in intentionally dilatory litigation tactics." *Id.* at 277; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005); *see also Duncan v. Walker*, 533 U.S. 167, 182 (2001) (Stevens, J., joined by Souter, J., concurring in part and concurring in the judgment) (stating that "there is no reason why a district court should not retain jurisdiction over a meritorious [habeas] claim and stay further proceedings pending the complete exhaustion of state remedies").

First, despite Respondents' assertion that DTA Petition's could have been pursued "at any time," (Motion at 7), Petitioner had good cause for not exhausting the potential DTA remedy before now. The DTA was not enacted until many months after the filing of Petitioner's petition for a writ of habeas corpus in this Court. Since then, the Supreme Court, the Congress, and the Court of Appeals all have made decisions on the scope and nature of review available to the detainees, and there remains a genuine prospect of further Supreme Court review of the *Boumediene I* jurisdictional holding. Following the Court of Appeals' opinion in that case, the most prudent option available to Petitioner was to await the Supreme Court's ruling on the *Boumediene* certiorari petition before filing any DTA petition. In light of the explanatory statement of Justices Stevens and Kennedy, it is now evident that exhaustion of DTA remedies will be a key consideration to any further review by the Supreme Court.

In cases involving comparable uncertainty and confusion over the procedural requirements for a "properly filed" state habeas petition, the Supreme Court has recognized that the petitioner could file a "protective" federal habeas petition, and request that the federal court issue a stay-and-abey order. *Pace*, 544 U.S. at 416-17 ("A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court."). The equitable considerations recognized in *Pace* apply to an even greater extent to the Guantánamo detainees, who confront novel legal issues in an ever-shifting procedural landscape.

As to the potential merits, three Justices of the Supreme Court would have granted expedited review of the matters raised in the *Boumediene* certiorari petition, and two Justices expressly required exhaustion of DTA claims. The DTA review in the Court of Appeals may involve the first-ever merits review of Petitioner's case by any court, despite his detention for

years – likely five or six – without <u>any</u> charges having been filed.  Petitioner has a number of factual and legal claims that he anticipates raising in the Court of Appeals, including, but not limited to the following:  Petitioner Saib's CSRT proceeded in his absence because the panel found a competent waiver of his right to participate, without any apparent inquiry into his capacity to participate at the time.  He anticipates challenging the CSRT process and the standard of "enemy combatant" applied by the CSRT, as well as the sufficiency of the evidence that purportedly met that standard.  He also anticipates challenging the CSRT process as a substitute for *habeas corpus*.  He anticipates that such legal issues may become the subject of further review by the Supreme Court.  DTA review under these circumstances – although Petitioner believes it is not an adequate substitute for habeas corpus review – provides at least some potential for relief in the interim, and therefore is not "plainly meritless."

Third, the delay in these proceedings cannot fairly be attributed to Petitioner.  The Guantánamo habeas actions have been tied up in appellate litigation almost continuously since their filing, during which time the courts, the Congress, and the Executive Branch have struggled to fashion a suitable legal framework.  Despite the unresolved legal situation, since filing this habeas corpus petition, Petitioner's counsel have moved for, and obtained, the Protective Orders in his case, sought access to Petitioner Saib (which was denied due to the "next friend status" of his petition), moved to enforce the Protective Orders, and contacted Petitioner through legal mail correspondence.  The overarching purpose of this work has been to seek a fair and efficient review of Petitioner's case, by a court of law.  In light of the statement in *Boumediene II* by Justices Stevens and Kennedy, Petitioner has every intention to exhaust the available DTA remedies expeditiously, to allow for further Supreme Court review.

Respondents' attempt to distinguish *Rhines* fails because Respondents attempt to interpret *Rhines* to mean less than it actually says. Respondents contend that the power of the district court to stay-and-abey under *Rhines* is limited only to those instances when failing to stay-and-abey would cause a statute of limitations to run that would preclude the petitioner from refiling (Motion at 6-7). This was the factual predicate in *Rhines*, not its holding. Nothing in *Rhines* limited the District Court's equitable power to stay-and-abey only to concerns regarding statutes of limitation. Rather, *Rhines* held that the equitable powers the District Court possessed before enactment of the statute of limitations continued to exist and were not extinguished by the statute. *Rhines*, 544 U.S. at 276. As in *Pace*, the concern warranting the stay-and-abey approach was to protect the petitioner from impairment of future exercise of habeas corpus rights. *Cf. Omar v. Harvey*, 479 F.3d 1 (D.C. Cir. 2007) (affirming the District Court's preliminary injunction barring transfer of a prisoner entered to preserve the court's jurisdiction over the habeas corpus petition of an American citizen detained in a military facility in Iraq).

Additionally, the exhaustion required by *Hawk* operates as does the exhaustion required by the statute in *Rhines*. Further, the same type of procedural obstacles that dismissal would create under 28 U.S.C. § 2254 confront detainees in Guantánamo cut off from contact with their lawyers and facing retroactivity questions regarding statutes that purport to impair the jurisdiction that unquestionably existed at the time the habeas corpus petition was filed. *Rhines* is controlling authority regarding stay-and-abey procedures while remedies are being exhausted.

In sum, the *Rhines* factors uniformly support this Court entering an order to stay this case, and to hold disposition of the merits in abeyance pending the outcome of the DTA litigation and Respondents' motion to dismiss offers no valid reason for not utilizing this appropriate procedure.

E.  **At a minimum, the Court Should Stay Any Contemplated Dismissal of Petitioner's Habeas Corpus Petition for Sixty Days.**

If this Court declines to issue a stay-and-abey order, at a minimum it should stay dismissal of the habeas corpus petition for sixty days from the date of ruling, pending the Court of Appeals' determination as to what procedures should govern the Petitioner's DTA case.  A sixty-day stay would allow for maintenance of the Protective Order governing this habeas action until the Court of Appeals can establish new procedures for Petitioner's DTA case.[5]  By contrast, the alternative – dismissal of the habeas action and the consequent termination of the Protective Order – endangers Petitioner's ability to pursue a DTA action.  For example, as this Court is aware, the Protective Order currently in place imposes an obligation upon counsel to destroy all protected documents or information (including copies) promptly within sixty days after a final resolution, and termination of any appeals, even though such documents will be necessary for Petitioner to pursue his DTA action.  Also, the Protective Order sets out the only existing framework for attorney-client access, and an interruption would severely prejudice Petitioner in the DTA action and any further habeas litigation, undermining counsel's representation and the attorney-client relationship.  The need for client consultation and the development of necessary facts is basic to the attorney-client relationship, and is required by the ethical obligations on counsel.

---

[5] Petitioner notes that a stay for sixty days should suffice because a motion to establish a protective order in DTA actions is already pending before the Court of Appeals in *Bismullah v. Gates*, No. 06-1197, and *Parhat v. Gates*, No. 06-1397.  Briefing on the procedural issues presented in those appeals is nearly complete, and argument is scheduled for May 15, 2007.  In addition, a motion to proceed with DTA review is also pending in the Court of Appeals in *Paracha v. Gates*, No. 06-1038.  On April 11, 2007, the panel issued an order setting a briefing schedule, calendaring argument for September 27, 2007, and directing the parties in their briefs "to take into account the court's disposition of [*Bismullah* and *Parhat*] in addressing issues related to discovery and this court's scope of review."

For these reasons, continuation of the Protective Order for a sixty-day period pending the establishment of new procedures by the Court of Appeals to govern Petitioner's DTA action is necessary to avoid a substantial injustice.

**F. In the Event of Any Contemplated Dismissal, This Court Should Transfer the Case to the Court of Appeals Pursuant to 28 U.S.C. § 1631.**

If the Court nevertheless finds that it lacks jurisdiction to hear this case, and declines to enter a stay, it should transfer the habeas action to the Court of Appeals, for consolidation with Petitioner's DTA Petition to be filed by May 15, 2007. The transfer statute provides:

> Whenever a civil action is filed in a court . . . or appeal . . . is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it was transferred.

28 U.S.C. § 1631. As described above, it is in the interest of justice for this Court to ensure that the current Protective Order remains in place pending the Court of Appeals' decision on how to govern these proceedings.[6] It is also in the interest of justice to preserve the status quo, where the Court of Appeals has jurisdiction over the same general subject matters, and must consider issues of client access and the scope of merits review, but has not yet had the opportunity to act. Under the circumstances, including the uncertain and shifting scope of federal court jurisdiction, this Court (at a minimum) should ensure that there is no gap in governing procedures until the Court of Appeals can fully consider these matters in *Bismullah* and *Parhat*.

---

[6] In other briefing, Respondents have taken the position that Guantanamo detainees' habeas corpus cases should be transferred pursuant to 28 U.S.C. § 1631. *E.g., Al Odah v. United States*, Nos. 05-5064, 05-5095 through 05-5116, Nos. 05-5062, 05-5063, Reply of Federal Parties Addressing the Detainee Treatment Act of 2005, at 28-31 (D.C. Cir. Mar. 17, 2006) (citing comments of Senator Graham, *inter alia*); *Hamdan v. Rumsfeld*, Civil Action No. 1:04-cv-01519-JR, Resp'ts' Reply in Supp. of Mot. to Dismiss, at 45 n.24 (D.D.C. Dec. 8, 2006).

### III.    CONCLUSION

For the foregoing reasons, Petitioner Saib respectfully requests that this Court enter an order staying his habeas corpus petition pending the outcome of further litigation related to his anticipated DTA Petition or, alternatively, if the Court now concludes that it is without jurisdiction, enter an order under 28 U.S.C. § 1631 transferring the pending action, including the existing Protective Order and the record in this case, to the Court of Appeals.

Dated:  May 4, 2007

Respectfully submitted,

/s Danielle R. Voorhees
Anne J. Castle
Scott S. Barker
J. Triplett Mackintosh
William Murane
Danielle R. Voorhees
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO  80202
Telephone:  (303) 295-8000

Of Counsel
Shayana Kadidal
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway 7th Floor
New York NY  10012
phone: (212) 614-6438
fax: (212) 614-6499

## CERTIFICATE OF SERVICE

I certify that on May 3, 2007, I sent the original and two copies of the foregoing document to the Court Security Officer ("CSO"), at the address below, via Hand Delivery and, pursuant to CSO procedure, the CSO will serve the United States Department of Justice and will file the foregoing document with the Court.

U.S. Department of Justice, Litigation Security Section
Attention Jennifer Campbell or Erin Hogarty
20 Massachusetts Ave., NW
Suite 5300
Washington, DC 20529-0001

/s Rosa Smith
Holland & Hart LLP

3704713_1.DOC